**In re MONSANTO COMPANY, et al.**

No. 10–99–137–CV.

Court of Appeals of Texas, Waco.

Aug. 31, 1999.

Elizabeth B. Kamin, G. Joe Ellis & Edward M. Carstarphen, Woodard, Hall & Primm, P.C., Houston, W. Stephen Rodgers, Rodgers, Miller, Ellison, P.C., Bryan, for Relators.

Roy L. Barrett, Naman, Howell Smith & Lee, P.C., Waco, Richard A. Shanks, Houston, Joe K. Longley & Maxwell, L.L.P., Austin, Ron Butler, Marlin, for Respondent.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

1. Although the trade-secret privilege was raised below, it has not been asserted in this

## OPINION

VANCE, Justice.

Relators, Monsanto Company and other entities, seek a writ of mandamus requiring Respondent, the Honorable Robert Stem, Judge of the 82nd District Court of Falls County, to vacate an order by which he denied their claims of privilege as to almost 400 documents. The Real Parties in Interest (Plaintiffs) are farmers and farming entities who planted Relators' genetically-engineered cotton seed during the 1996 growing season. They seek damages for spraying costs and lost yields, alleging that Relators made false claims concerning the insect-resistant nature of the product. During the litigation, a discovery dispute arose concerning whether the attorney-client and work product privileges apply to certain documents.

## THE UNDERLYING LITIGATION

Monsanto Company (Monsanto) developed a gene technology called "Bollgard" designed to produce cotton plants that are resistant to certain insects. The Bollgard gene was spliced into cotton seed prepared by Delta and Pine Land Company ("D & PL") and distributed by other Relators. After problems developed in the fields during the growing season, the Plaintiffs filed suit against Relators on August 30, 1996, alleging fraud and usury.

The Plaintiffs served Relators with requests for production. Relators produced numerous documents but withheld certain documents asserting several privileges, including attorney-client, work product, and trade secrets.[1] Relators filed a motion for a protective order, supported with affidavits. The Plaintiffs filed a motion to compel production of the documents. Relators responded to the motion to compel and supplemented their motion for a protective order with more affidavits. "Privilege

proceeding.

logs" were furnished identifying the privilege(s) asserted to each document and describing the documents to which the privileges were claimed. The privilege logs group the disputed documents into four sets. The Plaintiffs objected to Relators' affidavits on the grounds that they did not show personal knowledge of the persons making the affidavits. The Plaintiffs also filed an affidavit in an attempt to establish the crime-fraud exception to the attorney-client privilege.

The court conducted a hearing on May 11, 1999. By that time, Relators had reduced the number of documents to which they claimed a privilege to the approximately 400 now at issue. At the hearing, neither party offered additional evidence; both relied on their respective affidavits; each asked the court to review the documents *in camera*. The court took the matter under advisement and conducted an *in camera* inspection of the documents. On May 25, the court ordered that all but two of the documents be immediately released to the Plaintiffs, who took possession of the documents and made a copy of each. When Relators asked for a delay to seek relief by mandamus, counsel for the Plaintiffs agreed to wait until noon on May 27 to review the copies of the documents. By then, the originals had been returned to the Respondent.

### THIS PROCEEDING

Relators filed this original proceeding on May 27. At their request, we granted emergency relief directing that the documents not be reviewed by the Plaintiffs, that no further copies be made, and that the copies already made be immediately transmitted to the clerk of this court. Plaintiffs complied with that order.

Plaintiffs filed a response to the petition, and we heard oral argument.

Relators argue that the court abused its discretion in finding only two of the almost 400 documents to be privileged. They assert that they met the burden of alleging and proving the privileges and that the Plaintiffs did not controvert the privileges.[2] They further say they have no adequate remedy at law. The Plaintiffs, on the other hand, assert: Monsanto failed to prove any privilege; Respondent did not abuse his discretion; the "crime-fraud exception" set out in Rule of Evidence 503(d)(1) applies to the documents for which the attorney-client privilege is claimed; and Monsanto waived the privileges by substantially disclosing the documents.

### STANDARD OF REVIEW

■ To justify mandamus relief, Relators must establish that the court committed an abuse of discretion and that they have no adequate legal remedy. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding).

A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v.*

2. Relators also assert that the court erred in immediately releasing the documents to the Plaintiffs. Because we issued emergency orders preventing the Plaintiffs from viewing the documents, this point is moot.

Relators also offered for an *in-camera* inspection a 22–page document from their law firm's file. The document was covered by a Rule 11 agreement, was offered to establish the date Relators anticipated litigation over the cotton seed they had sold, and is not in dispute. Relators ask that we not disclose it if we deny their petition and return the copies of the disputed documents to the Plaintiffs. We will not disclose it.

Two other documents listed in the privilege logs were inadvertently produced to the Plaintiffs prior to the hearing—PR–INV–0318 and PR–INV–0322. (Throughout this opinion, we refer to the first page of a multi-page document.) In compliance with the discovery rule dealing with inadvertent production of privileged documents, the Plaintiffs returned the documents at Relators' request. Tex.R. Civ. P. 193.3(d). Copies of these documents were, however, tendered to the court and are included in the documents forwarded to this Court. As we will see, Relators failed to prove a privilege as to these two documents and they will be disclosed.

*Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). This standard, however, has different applications in different circumstances.

On factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker,* 827 S.W.2d at 840. The relator must establish that the trial court could reasonably have reached only one decision. *Id.* Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

A review of a trial court's determination of the legal principles controlling its ruling, however, is much less deferential. A trial court has no "discretion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in reversal by extraordinary writ. *Id.*

When a trial court erroneously orders the production of documents protected by a privilege, the aggrieved party has no adequate remedy at law. *See id.* at 843–44; *In re Continental General Tire,* 979 S.W.2d 609, 615 (Tex.1998) (orig.proceeding) (trade secrets); *Humphreys v. Caldwell,* 888 S.W.2d 469, 471 (Tex.1994) (orig.proceeding) ("attorney work product"); *Osborne v. Johnson,* 954 S.W.2d 180, 183 (Tex.App.—Waco 1997, orig. proceeding); *Marathon Oil Co. v. Moye,* 893 S.W.2d 585, 589 (Tex.App.—Dallas 1994, orig. proceeding). Thus, the central issue we must determine in this proceeding is whether any document the Respondent ordered produced is covered by a privilege prohibiting involuntary disclosure.

## THE ATTORNEY–CLIENT PRIVILEGE

"A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Tex.R. Evid. 503(b). The purpose of the attorney-client privilege is to secure the free flow of information between attorney and client on legal matters, without the fear that details of their communication will be disclosed. *Ford Motor Co. v. Leggat,* 904 S.W.2d 643, 647 (Tex. 1995); *In re Bloomfield Mfg. Co.,* 977 S.W.2d 389, 392 (Tex.App.—San Antonio 1998, orig. proceeding).

The "joint-defense" privilege protects "confidential communications made for the purpose of facilitating the rendition of legal services ... by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein." Tex.R. Evid. 503(b)(1)(C). The "joint-defense" privilege is included within the attorney-client privilege. *Id.*

Effective March 1, 1998, Rule of Evidence 503 was amended to adopt the "subject matter" test for an entity's assertion of the privilege, replacing the "control group" test previously used. Tex.R. Evid. 503(a)(2) & cmt; *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 197–98 (Tex. 1993). Under the subject-matter test, an employee's communication is deemed to be that of the corporation/client if:

> the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.

*National Tank,* 851 S.W.2d at 198 (quoting *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487, 491–92 (7th Cir.1970), *aff'd per curiam by an equally divided court,*

400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971)).

There is no attorney-client privilege if the "crime-fraud" exception in Rule 503 applies: "If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." TEX.R. EVID. 503(d)(1).

## THE WORK PRODUCT PRIVILEGE

"Work product" is now defined in the discovery rules as:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

Tex.R. Civ. P. 192.5(a). This definition encompasses the "attorney work product" and "party communications" discovery exemptions in former Rule 166b. *Id.* cmt. 8.

Rule 192.5(b) further elaborates on what work product is protected:

(1) Protection of Core Work Product—Attorney Mental Processes. Core work product—the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories—is not discoverable.

(2) Protection of Other Work Product. Any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means.

*Id.* 192.5(b).[3]

Litigation is "anticipated" when two tests are met: (1) whenever the circumstances would indicate to a reasonable person that there is a substantial chance of litigation, and (2) the party now asserting the privilege had a good faith belief that litigation would ensue. *National Tank*, 851 S.W.2d at 207. A party may reasonably anticipate suit being filed and prepare for the expected litigation before anyone manifests an intent to sue. *Id.* at 204. Actual notice of a potential lawsuit is not required for a party to anticipate litigation. *Trevino v. Ortega*, 969 S.W.2d 950, 956 (Tex.1998). To determine when a party reasonably anticipates or foresees litigation, the trial court must look to the totality of the circumstances and decide whether a reasonable person in the party's position would have anticipated litigation

---

**3.** Under the former rules, the "attorney work product" privilege protected documents prepared by attorneys or their representatives in anticipation of litigation that contain the attorneys' mental processes, conclusions, or legal theories. *In re Ford Motor Co.*, 988 S.W.2d 714, 719 (Tex.1998) (former Rule 166b(3)(a)). The privilege applied not only to documents generated by the attorney, but to memos, reports, notes, and summaries of interviews prepared by others for an attorney's use. *In re Bloomfield*, 977 S.W.2d 389, 392 (Tex.App.—San Antonio 1998, orig. proceeding).

The "investigative" or "party communication" privilege protected only those communi-

cations made "subsequent to the occurrence" on which the suit was based and in connection with the "particular suit" or in anticipation of the "pending litigation" in which the privilege was asserted. Former Rule 166b(3)(d); *In re Ford*, 988 S.W.2d at 719. Party communications not generated in connection with or in anticipation of the particular suit or in anticipation of the claims made a part of the pending litigation in which the privilege was asserted were not privileged. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex.1993). Rule 192.5(a)(2) has deleted the "subsequent to the occurrence" and "particular.. pending suit" requirements. TEX.R. CIV. P. 192.5(a)(2).

and whether the party actually did anticipate litigation. *Id.*

## APPLYING THE REVISED DISCOVERY RULES

Three questions initially arose when considering the privileges in question: (1) because some of the Relators are out-of-state corporations, does Texas law governing attorney-client privilege apply or does the substantive law of the jurisdiction(s) where the documents were created or where the particular Relator is domiciled apply?; (2) because some of the documents predate the adoption of the "subject matter" test that replaced the "control group" test, which Texas test applies?;[4] and (3) because the discovery rules were amended effective January 1, 1999, and Relators' motion for a protective order was filed after that date, do the new work product rules of Rule 192.5 apply or has former Rule 166b, now repealed, somehow been continued in effect for discovery requests made prior to its repeal? Our task became somewhat simpler when the parties agreed that Texas attorney-client privilege law applies, that the "subject-matter" test applies to these claims of attorney-client privilege, and that Rule 192.5 should be applied to this proceeding.

Because the rules have been recently revised with respect to discovery and the method of claiming privileges, we are to a large extent free to write on a clean slate in implementing the rules.

A party should no longer "object" to a request for written discovery on grounds that the requested material or information is privileged.[5] Tex.R. Civ. P. 193.2(f). Instead, the resisting party should, in a response or separate document: (1) state that information or material responsive to the request has been withheld; (2) identify the request to which the information or material relates; and (3) identify the privilege or privileges asserted.[6] *Id.* 193.3(a).

A party seeking discovery who desires to pursue information or material to which a privilege has been claimed may "serve a written request that the withholding party identify the information and material withheld." *Id.* 193.3(b). The resisting party must, within 15 days after receiving such a request, serve a response (commonly called a "privilege log") that: (a) asserts a specific privilege in each item of information or material or a group of items and (b) describes the information or materials withheld in such a way that the requesting party can assess the applicability of the specific privilege, but not in such a way as to reveal the privileged information itself or otherwise waive the privilege. *Id.*

Any party may request a hearing on a claim of privilege asserted under Rule 193. *Id.* 193.4(a). The party asserting the privilege must "present any evidence necessary to support the objection or privilege" by live testimony or affidavits that were served at least seven days before the hearing or at such other reasonable time as the court permits.[7] *Id.* If the court sustains the claim of privilege, the resisting party has no further duty to respond to that request. *Id.* 193.4(b). If the claim of priv-

---

**4.** Effective March 1, 1998, the "subject matter" test replaced the "control group" test in applying the attorney-client privilege to entities under Rule of Evidence 503(a)(2)(B).

**5.** However, an objection is apparently sufficient to preserve the claim of privilege if the "error" is not pointed out. Tex.R. Civ. P. 193.2(f). Once the error is pointed out, the objecting party must assert the privilege in compliance with Rule 193.3. *Id.*

**6.** This procedure is subject to an exemption for privileged communications and documents involving a party to a suit and the lawyer representing that party. Tex.R. Civ. P. 193.3(c). Many of the documents claimed as privileged in this proceeding would fall into this exception. However, because the Relators have listed the documents in the privilege logs and have provided proof, this exemption has no applicability here.

**7.** This represents little change from the former rules. *See Giffin v. Smith*, 688 S.W.2d 112, 114 (Tex.1985) (orig.proceeding).

ilege is denied, the resisting party must produce the requested information or material within 30 days or at such time as the court orders. *Id.*

■ When the party asserting a privilege has made a prima facie case for its claim, the requesting party has the burden to point out to the court which specific documents or groups of documents it believes require inspection. Otherwise, trial judges will be required to inspect untold numbers of documents. The requesting party should be in a position to do so based upon (1) the contents of the privilege log,[8] (2) other discovery and documents, (3) discovery specifically designed to test the claim of privilege, and (4) the evidence at the hearing. If the court determines that an *in-camera* review of some or all of the requested discovery is necessary, that material must be segregated and produced to the court in a sealed wrapper within a reasonable time following the hearing. *Id.* 193.4(a).

Applying the foregoing rules to this case, we find that Relators had the burden to claim the privilege(s) in a response or separate document, which they did. *Id.* 193.3(a). They had to claim a specific privilege and identify each document in such a way as to allow the Plaintiffs to assess the applicability of that privilege and establish proof of the privilege at the hearing. *Id.* 193.3(b). Relators say they did.

## THE HEARING

At the hearing, Relators had the burden of proving the privilege they asserted to

each document by testimony or affidavit. *Id.* 193.4(a). They relied on affidavits. Relators' original motion for protective order was supported by six affidavits. It was supplemented with nine additional affidavits. Relators served "privilege logs" which: identified each document by "Bates number," number of pages, date, document title, document type, document traits, author/source (if known), and recipient(s) (if applicable); identified the persons receiving a copy of the document; and identified the privilege(s) asserted as to each document.[9]

After the hearing, the court chose to review all of the documents *in camera*. *See id.*

## OUR REVIEW

We will now review the ruling which allowed the Plaintiffs to discover nearly all the disputed documents.

*Waiver*

■ We initially inquire whether, as the Plaintiffs assert, the information Relators furnished at the hearing was so extensive as to waive the privileges they were claiming as to any of the documents. During argument to the court, Relators tendered copies of some of the documents listed in the privilege log(s) to the court but not to Plaintiffs. Relators referred to portions of those documents, arguing that they established the date Relators "anticipated litigation." [10]

Plaintiffs raised waiver under Rule of Evidence 511 by post-hearing briefs. TEX.R. EVID. 511. We do not find that Relators' disclosure to the court constitut-

8. Rule 193.3(b) requires that the withheld documents be described in a way that allows the requesting party to "assess the applicability of the privilege." *See* TEX.R. CIV. P.193.3(b).

9. Four of the logs are at issue here. A fifth privilege log, designated as "PR–GC," listed two documents which the trial court ruled were privileged.

10. Document PR–AS–010 was described as a memo regarding plaintiff Danny Minter,

which stated that Minter had threatened litigation as early as May 30, 1996, and that Minter's retained counsel had contacted D & PL on July 5. Document PR–INV–121 was described as a document establishing that Monsanto received word of a threatened lawsuit on July 25. Document PR–RS–545 was described as a document predating litigation which related to seeking and rendering legal advice regarding Bollgard. A final, unnumbered document was described as correspondence between Monsanto and its law firm.

ed waiver. A privilege is waived under Rule 511 if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged." *Id.* Although Relators' oral description of the contents of the documents gave, in some instances, more information than they had listed on the corresponding privilege log, we do not believe that the description was a disclosure of a "significant part" of the privileged matter.

*Affidavits as Evidence*

■ Next, we inquire whether the affidavits were before the court at the hearing. They were not "offered into evidence." Nevertheless, the record of the hearing shows that the parties and the court undisputedly considered the affidavits. Although formal admission into evidence would be better, we have held that under these circumstances no formal offer into evidence is necessary. *See Osborne v. Johnson,* 954 S.W.2d 180, 186 (Tex.App.— Waco 1997, orig. proceeding).

■ Next, the Plaintiffs point out that they objected to the affidavits on the grounds that they were not based on the personal knowledge of the affiants. We reject this assertion for two reasons. First, they obtained no ruling on their objections. As we have said in the summary-judgment context, without a ruling on an objection in the record, we cannot determine whether the trial judge considered the objected-to evidence in making his decision. *See Eads v. American Bank, N.A.,* 843 S.W.2d 208, 211 (Tex.App.— Waco 1992, no writ). Thus, we hold that the affidavits remained part of the "evidence" in support of Relators' contention that the various documents are privileged. Second, we have reviewed the affidavits

and find that they do establish the personal knowledge of the affiants. The affidavits attached to the supplemental motion state that the statements contained therein are "true and correct and based upon [the affiant's] personal knowledge unless otherwise expressly stated." None of the affidavits "expressly stated" otherwise, thus we believe they sufficiently establish personal knowledge. They are distinguishable from the type of affidavits which the Plaintiffs say are deficient. *See Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994) (affidavits based on "personal knowledge and/or knowledge which [the affiant] has been able to acquire on inquiry").[11]

### Do the Affidavits Support the Claims?

■ The mere listing of a specific privilege in a response or a privilege log does not prove that privilege. The response and log are the vehicles by which the privilege is claimed. Proof of the facts that justify the claim of privilege is necessary. TEX.R. CIV. P. 193.4(a). Thus, we look to the affidavits.

Do the affidavits establish prima facie claims of privilege to the various documents they describe? Yes and no.

The majority of the affidavits simply identify numerous employees, representatives, and agents of the Relators who were involved in the development or marketing of Bollgard cotton. During oral argument, Relators argued that four affidavits in particular establish the privileged nature of the documents listed in the four privilege logs tendered to the court. They assert that the Rule 503 attorney-client privilege is established for the documents listed in the "PR–RS" log by the affidavit of Jon

11. The Plaintiffs assert that, because the dates shown at the bottom of the privilege logs attached to some of the affidavits as exhibits are after the dates on which the affiants signed their affidavits, Respondent could have concluded that the affidavits were unreliable and based his decision on that alone. We disagree. The affidavits which refer to a privilege log state that the log is a "list of documents by description which contain or reflect" a privilege. It is the documents themselves, not the privilege log listing the documents, which contain the privileged material and about which the affiant has personal knowledge.

Beusen and for the documents listed in the "PR–DS" log by the affidavit of David Snively. TEX.R. EVID. 503. They assert that the Rule 192.5 work product privilege is established for the documents listed in the "PR–INV" log by the affidavit of Brett Begemann and for the documents listed in the "PR–AS" log by the affidavit of Ann Shackelford.

The affidavit of Jon Beusen states that he has been an attorney for Monsanto since 1980. Exhibit A to Beusen's affidavit is entitled "Log of Privileged Documents Numbered with 'PR–RS' Prefix." It lists 193 documents dated from 1990 to 1997. Two of the 193 documents do not list the "attorney-client" privilege as a claim on the log. These two documents list attorney work-product, investigative, and party-communications as the privileges asserted. Of the remaining 191, one claims both the attorney-client and work product privilege and 190 claim only the attorney-client privilege. Beusen's affidavit asserts that the documents reflect (1) attorney-client communications and (2) work papers reflecting attorney mental processes developed in rendering legal services for Monsanto. He further states that the documents were intended to be and were kept confidential, and were made for the purpose of facilitating the rendition of legal services.

We believe that Beusen's uncontroverted affidavit [12] establishes the attorney-client privilege and what is now the "core work product" privilege as to each document for which the privileges are claimed in the "PR–RS" privilege log. TEX.R. EVID. 503; TEX.R. CIV. P. 192.5.

The affidavit of David Snively states that he is an attorney employed by Monsanto. Attached to the affidavit is Exhibit A, a log of 117 "PR–DS" documents dated from July 28, 1996, to October of 1997. Snively's affidavit states in part:

2. I am an attorney and have been licensed to practice law in the States of Indiana and Missouri since 1979 and 1984, respectively. Since 1983, I have been employed by Monsanto Company ("Monsanto") as an attorney. I was asked to and did, in fact, provide legal services to Monsanto as my client, generally in connection with Bollgard cotton. During the course of providing legal services to Monsanto in connection with Bollgard cotton, documents containing confidential attorney-client communications and attorney work product were generated. Attached hereto as Exhibit A is a list of documents by description which contain or reflect (1) confidential attorney-client communications among me and other in-house and/or outside attorneys for Monsanto, or other Monsanto employees, representatives or agents, and (2) work papers reflecting attorneys' mental processes developed in rendering legal services to Monsanto. Those documents containing confidential communications among me and other inhouse and/or outside attorneys for Monsanto or other Monsanto employees, representatives, or agents, as well as those work-product documents reflecting the mental processes of attorneys, were intended to be and were kept confidential, and were made for the purpose of facilitating the rendition of professional legal services.

3. The documents described in Exhibit A, in addition to being attorney-client communications and confidential attorney work product, were also generated in anticipation of litigation and in connection with pending litigation concerning Bollgard cotton. Beginning at a time prior to the first of those documents described in Exhibit A being generated, I and other Monsanto representatives believed in good faith that there was a substantial chance that litigation would ensue and concluded from the

---

**12.** "Uncontroverted" as to the facts stated in the affidavit. See, however, our discussion of the "crime-fraud" exception in Rule 503.

totality of the circumstances surrounding Monsanto's investigation, which included reported threats of litigation, that there was a substantial chance that litigation would ensue. With regard to the work-product documents described in Exhibit A, these documents were generated for the purpose of preparing for litigation.

We believe that Snively's uncontroverted affidavit[13] establishes the attorney-client privilege and what is now the "core work product" privilege as to each document for which the privileges are claimed in the "PR–RS" privilege log. TEX.R. EVID. 503; TEX.R. CIV. P. 192.5.

The affidavit of Brett Begemann states that he is Monsanto's Regional Business Director, North Central Region. He states that Monsanto began receiving complaints and threats of lawsuits in June 1996, continuing into July. Based on these complaints and threats, Monsanto concluded in June 1996 that there was a substantial chance that litigation would ensue. In contemplation of those claims, Monsanto began investigating to prepare for the anticipated litigation. Begemann further states that the Bollgard technology is patented and a trade secret. Although his affidavit does not refer to any documents nor to a privilege log, it generally supports an "anticipation-of-litigation" date as early as June of 1996. Although counsel at oral argument tried to connect this affidavit to the PR–INV log, it does not reference any log and therefore cannot establish a prima facia privilege in the documents described in the log.

Ann Shackelford, legal coordinator for D & PL, executed two affidavits. The first states that D & PL began receiving complaints and threats of lawsuits in June 1996 and continuing into July. It also lists names of D & PL's outside counsel. Shackleford's supplemental affidavit lists the names of D & PL employees and representatives who were involved with Bollgard cotton. Her affidavit does not refer to a privilege log, but does identify document number PR–AS–017 as her handwritten notes. The first affidavit generally supports the "anticipation-of-litigation" date and claim. Taken together, the affidavits prove the work product privilege as to the document numbered PR–AS–017. Neither affidavit asserts facts that establish a prima facie privilege in the remainder of the documents described in the "PR–AS" log.

The only other affidavits which reference particular documents are those of Monsanto employees Gary Barton and David Coombes. Both affidavits identify documents from the PR–INV log as their "handwritten notes taken ... at various meetings relating to Monsanto's Bollgard product." These affidavits, in conjunction with the other affidavits establishing "anticipation of litigation," prove the work product privilege as to the documents they describe.

*Effect of Affidavits*

As to the documents designated "PR–RS" and "PR–DS," Relators' affidavits make out a prima facie case of privilege. Because the party seeking the documents did not point out to the court which specific documents identified in these logs it believed required inspection, Respondent could have sustained the claims of privilege without more. *See* TEX.R. CIV. P. 193.4(a). As to the documents designated "PR–INV," a prima facie showing was made as to the documents specifically listed in Coombes' and Barton's affidavits. As to the documents designated "PR–AS," a prima facie showing was made as to the document numbered PR–AS–017. As to the remainder of the documents designated "PR–INV" and "PR–AS," no prima facie showing was made. Thus, Respondent could have denied the claims of privilege to these documents.

In each instance, the results of the hearing relieved Respondent of the responsibil-

---

13. See footnote 12.

ity of reviewing the documents *in camera.* The rules, however, allowed Respondent to determine whether an *in-camera* inspection of any or all of the documents was necessary. *Id.* In reviewing them, he went above and beyond what was required of him.

### In Camera Review

Because the court inspected the documents *in camera,* we have exercised our discretion to also review them. *Marathon Oil Co. v. Moye,* 893 S.W.2d 585, 593 (Tex. App.—Dallas 1994, orig. proceeding) ("As a reviewing court, we may conduct our own *in camera* inspection to determine whether a trial court properly applied the law of privilege to the documents.") (citing *Barnes v. Whittington,* 751 S.W.2d 493, 495 (Tex.1988) (orig.proceeding)). Our inspection was to (a) determine whether the documents matched their descriptions in the privilege logs; (b) with respect to the documents listed in the "PR–RS" and "PR–DS" logs (as to which a prima facie showing of privilege was made), determine whether any document so contradicts the affidavits as to destroy the claim of privilege as to that document; and (c) with respect to the documents listed in the "PR–INV" and "PR–AS" logs (as to which no prima facie showing of privilege was made),[14] determine whether any document, in conjunction with the other proof presented, established a privilege as to that document.[15]

Before we discuss the results of our *in camera* inspection, we should state the approach we took in reviewing the documents. The justices assembled in the courtroom and examined the disputed documents, one document at a time, and dis-

cussed those necessary to our decision. We considered each document, in light of the affidavits, on its own. We did not use information contained in one document to "bootstrap" a privilege to another document. In other words, one document to which a privilege was established or asserted was not considered as evidence to establish a privilege asserted to another document. Additionally, we did not consider any information listed on the privilege logs as evidence. The logs were not incorporated into any affidavits and thus the information contained in the logs is no more than an unproven assertion like any other pleading.

Both the attorney-client privilege and the work product privilege have been recently expanded—the former by changing from the control-group test to the subject-matter test and the latter by combining privileges and eliminating the "subsequent to the occurrence" and "particular pending suit" requirements.[16]

Looking at the attorney-client privilege, first, the document must be a "communication." Tex.R. Evid. 503(b)(1). Second, employees of a party claiming the privilege are "representatives" within the Rule if they have authority to "obtain professional legal services" or "to act on advice thereby rendered." *Id.* 503(a)(2)(A). A representative is also any person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of the client's employment.[17] *Id.* 503(a)(2)(B). Third, because communications "between representatives of a client" are protected if they otherwise meet the requirements of the Rule, a lawyer need

---

**14.** Those documents which were not specifically identified in the affidavits of Coombes, Barton, and Shackleford.

**15.** Because Relators adduced evidence in the form of affidavits, we need not decide whether the current rules still allow a claim of privilege to be based only on the disputed information or material itself. *See Weisel Enter., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex. 1986) (orig.proceeding) ("Often the docu-

ments themselves will be the only evidence which substantiates (or refutes) the claimed privilege.").

**16.** See footnote 3.

**17.** Thus, the persons sending and receiving the documents in this case are, for the most part, employees who are "representatives."

not be involved as an author or recipient. *Id.* 503(b)(1)(D). This is a very broad privilege as now written.

We recognize that it might be argued that all communications between corporate representatives could be claimed as privileged on the basis that "the legal department can better represent us if we keep them informed." We reject that assertion. We do not believe that it is necessary for the legal department to be advised of every development out in the field, no matter how minute.[18] Thus, we applied common sense to the contents of the documents.

Turning to the work product privilege, we reviewed the documents in light of the two basic categories specified in the rule: "core work product" and "other work product." TEX.R. CIV. P. 192.5(a). "Core work product" is basically unchanged from the former rule. As an attorney develops a case in anticipation of litigation, documents or information containing the mental impressions, opinions, conclusions, and legal theories are protected from discovery. *Id.* This privilege is usually not difficult to apply. "Other work product," however, includes material prepared or mental impressions developed in anticipation of litigation by or for a party or its representatives. *Id.* Representatives include attorneys, consultants, sureties, indemnitors, employees, and agents. "Other work product" also includes communications made in anticipation of litigation or for trial among representatives of a party. Thus, once a party anticipates litigation, a very broad privilege attaches to communications among its employees.

While "core work product" is not discoverable, "other work product" is discoverable if the party seeking discovery can establish a substantial need for the materials and its inability to obtain the substantial equivalent of the materials without undue hardship. *Id.* 192.5(b). The Plaintiffs did not attempt to show a "substantial need" for "other work product."

Applying these broad rules, we considered the contents of each document in conjunction with the other evidence presented. We found that the evidence established the attorney-client privilege in some documents and the work product privilege in others.

## A. ARE THE DOCUMENTS DESCRIBED PROPERLY?

Here, we asked: Do the documents match their privilege-log descriptions? We find that the privilege logs fairly describe the documents and comply with Rule 193.3(b). *Id.* 193.3(b).

## B. DOES ANY DOCUMENT DESTROY THE PRIVILEGE?

We asked: Does any document listed in the PR–RS or PR–DS log so contradict the affidavit as to destroy the privilege as to that document?

### (1) PR–RS LOG DOCUMENTS

■ The PR–RS log asserts the attorney-client privilege as to all but two documents, and lists "attorney work product" (now "core work product") as the privilege claimed in those two. Beusen's affidavit supports the attorney-client privilege and core work product privilege.

Our review of the documents revealed: (a) copies of electronic mail and memoranda, many with drafts of legal documents attached; (b) facsimile cover pages with drafts of legal documents, memoranda or reports attached; (c) reports with handwritten notes; (d) memos regarding patent applications, some with drafts of legal documents attached; (e) drafts of pages from legal documents with handwritten notes; and (f) letters to and from outside counsel. We noted that some documents show either no date, no author, no recipient, or some combination thereof.

Many of the memos and e-mails between Monsanto's attorneys and representatives

---

**18.** Although once litigation is anticipated, events in the field may have more signifi-

cance. And, under those circumstances, the work product privilege may be available.

ask for "suggestions," "review," and "input."

■ The memoranda regarding possible patent problems and proposed strategies, drafts of patent applications, and drafts of letters to the Environmental Protection Agency request comments from those reviewing the draft. Some memos include exchanges between Monsanto's attorneys and representatives regarding the possible purchase of stock in other entities or the purchase of other companies. Copies of e-mail between Monsanto's attorneys and representatives discuss the proposed agreements and the valuation of other companies targeted for purchase.[19]

"Confidential communications made for the purpose of facilitating the rendition of professional legal services" are privileged. TEX.R. EVID. 503(b). The expanded "subject matter" test deems an employee's communication privileged if it is made at the direction of his superiors and its subject matter is the performance of the employee's duties. *Id.* 503(a)(2); *National Tank,* 851 S.W.2d at 198. Although some documents have many persons listed as a recipient of either the original or of a "carbon copy," all recipients (with the exception of a few documents discussed below) are Monsanto's employees or attorneys. We believe the contents of these communications fall within the subject-matter test of Rule 503. Thus, the majority of the documents designated in the PR–RS log are entitled to the attorney-client privilege. TEX.R. EVID. 503(b); TEX.R. CIV. P. 192.5(b).

■ Several documents are reports written by Monsanto attorneys with no designated recipient. These appear to be "core work product" (attorney work product containing the attorney's mental impressions, conclusions, and legal theories) rather than "communications." *Id.* Relators did not assert the "core work product" privilege as to these documents on the privilege log; rather they relied solely on the attorney-client privilege. Beusen's affidavit, however, states that the documents listed in the attached PR–RS privilege log are either "communications" or work product. Thus, we accept his assertion that these documents were "communicated" within the meaning of the Rule. TEX.R. EVID. 503.

■ Two documents show recipients who are not designated as Relators' representatives or agents:

PR–RS–661:  a letter on "Calgene" letterhead; and

PR–RS–739:  a draft agreement with "Applied Genetics" designated as the recipient.

Because these two documents have been disclosed to third parties who were not proven to be "representatives of the client" as defined in the Rule, they are not "confidential communications" falling within the attorney-client privilege. TEX.R. EVID. 503(b).[20] Thus, they will be disclosed.

The following documents are contained in the materials, but are not listed on the privilege log. They are:

PR–RS–353:  a memo regarding the EPA's approval of the cotton EUP;

**19.** Some communications have copies of other documents attached that appear otherwise discoverable. Because they are part of a privileged communication they are protected in this context. *Pittsburgh Corning Corp. v. Caldwell,* 861 S.W.2d 423, 424–25 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding); *Keene Corp. v. Caldwell,* 840 S.W.2d 715, 719–20 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). We have no way to know if these attachments have been disclosed under another request.

**20.** The document designated PR–RS–049, described as a memo regarding licensing terms, is listed on the privilege log but a copy of the document is not contained in the materials reviewed by the trial court. Because the affidavit and privilege log assert the attorney-client privilege, the document will remain privileged. We have no way to determine if Relators have already provided Plaintiffs with the document.

PR–RS–594: a memo regarding a letter to the EPA; and

PR–RS–676: a memo regarding the anticipated registration of Bollgard cotton.

They will be disclosed, as their status as privileged documents is not before us.

### (2) THE PR–DS LOG DOCUMENTS

The PR–DS log asserts the attorney-client privilege, the attorney work product privilege, and the investigative privilege as to each document. Our review of the documents reveals: (a) copies of electronic mail; (b) memoranda, some with handwritten notes; and (c) two reports written by a Monsanto attorney regarding litigation questions. The majority of these documents are confidential communications between Monsanto attorneys and employees or are the core work product of a Monsanto attorney. *Id.* 503(b); Tex.R. Civ. P. 192.5(b).

■ Some of the documents have "Sargent & Potratz," an advertising and public relations firm, as a recipient. The affidavit of David Rhylander states that the firm is an agent and representative of Monsanto. The affidavit of David Snively states that the documents listed in the PR–DS log are attorney-client or core work product documents. Because these affidavits were unchallenged, we will not disclose these documents which were sent to an outside firm.[21] The remainder of the documents are within the asserted privileges. Thus, we will not disclose any of the documents listed in the PR–DS log.

### C. DOES ANY DOCUMENT ESTABLISH PRIVILEGE IN CONJUNCTION WITH THE OTHER EVIDENCE PRESENTED?

In reviewing the PR–AS and PR–INV logs (to which no prima facie showing was

made),[22] we asked whether any document listed, in light of the information contained in the affidavits, shows that Relators are entitled to claim a specific privilege as to that document.

### (1) THE PR–AS LOG DOCUMENTS

The PR–AS log asserts the investigative privilege (now "work product") as to each document.[23] It claims attorney work product (now "core work product") as to six of the documents and additionally asserts the attorney-client privilege to two of those six. Our review of the documents revealed: (a) copies of electronic mail; (b) memoranda between D & PL employees; (c) handwritten work papers; and (d) reports. The documents are communications between D & PL employees, D & PL attorneys, or a combination.

The two memos to which the attorney-client privilege is asserted fall within that privilege, when considered with the affidavits. Both regard Bollgard litigation and appear to facilitate the rendition of legal services. Tex.R. Evid. 503(b).

Four documents fall within the work product definition. Tex.R. Civ. P. 192.5(a). They contain (1) material prepared or mental impressions developed in anticipation of litigation or (2) communications made in anticipation of litigation between party representatives. *Id.*

■ The remainder of the documents, considered in light of the information contained in the affidavits, do not show that Relators are entitled to claim a specific privilege as to those documents. Thus, they will be disclosed. They are:

PR–AS–002: a report which does not show its author on its face;

---

21. We recognize that there are instances in which disclosure to an outside firm is so unrelated to a privilege that the disclosure will result in a waiver.

22. See footnote 14.

23. The only affidavit specifically referencing the PR–AS privilege log is that of Ann Shackelford. She states that the document designated as AS–017 contains her handwritten notes. The "investigative" (now "work product") privilege is listed as the privilege asserted.

PR–AS–012: handwritten notes which do not show an author;

PR–AS–021: a memo written by a person not identified in any affidavit as a D & PL employee;

PR–AS–024: a memo with the same unlisted person shown as a recipient;

PR–AS–028: a report which does not identify the author or the recipient; and

PR–AS–035: a memo to all D & PL employees which exceeds the scope of the asserted privilege.

## (2) THE PR–INV LOG DOCUMENTS

The PR–INV log asserts the investigative privilege (now "work product") as to each document. Additionally, it asserts the attorney-client privilege and/or attorney work product privilege as to eleven of the documents.

Our review of the documents reveals: (a) copies of electronic mail; (b) memoranda between Relators' employees (c) handwritten work papers and meeting notes; (d) facsimile cover pages; (e) reports; (f) letters; and (g) drafts of advertisements. Like other documents we reviewed, some documents show either no date, no author, no recipient, or some combination.

The majority of the documents fall within the "work product" definition. TEX.R. CIV. P. 192.5(a). Some of the documents fall within the attorney-client privilege. TEX.R. EVID. 503(b).

■ Those documents which do not fall within either privilege and will be disclosed are:

PR–INV–044: a report of questions and answers regarding Bollgard performance;

PR–INV–049: a memo regarding Bollgard questions and answers prepared by Monsanto and sent to D & PL;

PR–INV–169: a memo on Bollgard written by "Randy";

PR–INV–318: a report on·a "East Texas Bollgard Problem" that does not show an author on its face; and

PR–INV–322: a report on a Brazos River Bottom trip that does not show its author.[24]

Document PR–INV–060 is listed on the privilege log but a copy is not in the materials reviewed by the trial court. Although we withheld document PR–RS–049 under similar circumstances, that document had a specific affidavit establishing the attorney-client privilege. Because the privilege claimed as to document PR–INV–060 is not supported by a specific affidavit, we will disclose the document.

## CRIME–FRAUD EXCEPTION

■ The Plaintiffs assert that the crime-fraud exception to the attorney-client privilege applies to the disputed documents. Rule of Evidence 503(b)(1) provides an exception to the attorney-client privilege:

*Furtherance of Crime or Fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

TEX.R. EVID. 503(d)(1). Once the resisting party establishes the attorney-client privilege, the party seeking the disputed

**24.** Affidavits establishing the identity of the authors of documents PR–INV–318 and PR–INV–322 were filed on May 25 shortly after the court issued its letter ruling disclosing the documents. Affidavits must be served "at least seven days before the hearing or at such other reasonable time as the·court permits." TEX.R. CIV. P. 193.4(a). Because these affidavits were not filed seven days before the hearing and were filed after the court had issued its ruling, we have not considered them.

documents may assert the crime-fraud exception to the privilege. *El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 n. 1 (Tex.App.—San Antonio 1994, orig. proceeding). The crime-fraud exception applies only if a prima facie showing is made of contemplated fraud. *Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223, 227 (Tex.1992) (orig.proceeding). There must also be a relationship between the document sought and the prima facie proof offered. *Id.*

■■■■ The prima facie proof must show "a violation sufficiently serious to defeat the privilege." *Freeman v. Bianchi*, 820 S.W.2d 853, 861 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding).[25] A prima facie showing is sufficient if it sets forth evidence that would establish the elements of a fraud that was ongoing or about to be committed when the document was prepared. *Id.* The fact that the plaintiff's cause of action alleges fraudulent conduct is insufficient. *Cigna Corp. v. Spears*, 838 S.W.2d 561, 569 (Tex.App.—San Antonio 1992, orig. proceeding). The attorney-client privilege is lost only when the legal communications or services were obtained to commit or plan to commit a fraud. *Id.*

■■■ The Plaintiffs offered the affidavit of Richard Shanks, one of their attorneys, to make a prima facie showing of the exception. He asserts that Relators knowingly made false statements regarding Bollgard cotton when marketing and selling it to the Plaintiffs. Shanks' affidavit has attached several documents which he contends show the false statements.

The affidavit and its attachments do not establish that legal services were obtained to commit or perpetuate fraud. *See id;* TEX.R. EVID. 503(d)(1). Furthermore, the affidavit fails to establish a relationship between the documents for which the privilege is challenged and the claim of fraud. *See Granada*, 844 S.W.2d at 227.

## CONCLUSION

Having reviewed the documents and the affidavits, we find that Relators established either the attorney-client privilege, the work product privilege, or both in most of the documents. We further find that the Plaintiffs did not make a sufficient showing to invoke the crime-fraud exception. Thus, we find that Respondent abused his discretion by ordering the production of privileged documents. *See Walker*, 827 S.W.2d at 840. Relators have no adequate remedy at law. *Id.* at 843–44.

Respondent correctly ordered production of the documents that were not protected from disclosure by a proven privilege. The documents which should be produced to Plaintiffs are:

PR–RS: RS–353; RS–594; RS–661; RS–676; RS–739;

PR–DS: None;

PR–AS: AS–002; AS–012; AS–021; AS–024; AS–028; AS–035; and

PR–INV: INV–044; INV–049; INV–060; INV–169; INV–318; INV–322.

No other documents described in the privilege logs should have been ordered produced to the Plaintiffs.

We conditionally grant the writ of mandamus and direct Respondent to modify his order to allow discovery of only the non-privileged documents listed above and to withhold from Plaintiffs the remaining documents which are privileged. Because we are confident that Respondent will comply with our decision, the writ will issue only if he fails to do so.

---

25. *Freeman v. Bianchi*, 820 S.W.2d 853, 861 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding), and *Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223, 227 (Tex.1992) (orig.proceeding), involve the same parties. The First Court of Appeals determined that the crime-fraud exception applied to certain documents. *Freeman*, 820 S.W.2d at 862. Granada filed a mandamus proceeding in the Supreme Court which determined that the court of appeals correctly held that the documents fell within the crime-fraud exception. *Granada*, 844 S.W.2d at 227.

We stay our judgment for fourteen (14) days to allow the parties an opportunity to file a motion for rehearing in this court or to seek relief from our determination in the Supreme Court. We will maintain possession of the documents reviewed *in camera* and the copies delivered to our clerk by the Plaintiffs until further order of this court or the Supreme Court.