No. 04-02-00588-CV



IN RE TOYOTA MOTOR CORPORATION and Toyota Motor Sales, U.S.A., Inc.,


Relators



Original Proceeding from the 225th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CI-16451


Honorable John Specia, Jr., Judge Presiding (1)



Opinion by: Paul W. Green, Justice

Dissenting opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Paul W. Green, Justice

 Sarah. B. Duncan, Justice


Delivered and Filed: December 11, 2002


PETITION FOR WRIT OF MANDAMUS DENIED IN PART AND CONDITIONALLY
GRANTED IN PART


 In this original proceeding, relators Toyota Motor Corporation and Toyota Motor
Sales, U.S.A., Inc. (Toyota) seek to overturn the trial court's order compelling Toyota to
produce documents Toyota claims are privileged. We deny the writ in part and conditionally
grant the writ in part.

BACKGROUND

 Frank Naranjo, Teresa Naranjo, and Charles Buffington, Jr. (plaintiffs) sued Toyota
for damages arising from the deaths of two passengers in a rollover accident involving a
Toyota 4Runner. Toyota 4Runners produced in 1996, 1997, and early 1998 had been
recalled due to instability; however, the vehicle in which the passengers were riding was not
included in the recall.

 After producing over 100,000 pages of documents, drawings, and videotapes in
response to plaintiffs' discovery requests, Toyota withheld 86 documents, asserting attorney-client and work product privileges, and produced a privilege log identifying the withheld
documents. Plaintiffs filed a motion to compel the 86 documents, asserting the privilege log
was insufficient and not all of the documents were privileged. At the hearing, however,
plaintiffs sought to compel only 6 of the 86 documents.

 At the hearing, Toyota introduced the affidavit of its in-house counsel, Alexander L.
Conti. With regard to the 6 documents plaintiffs sought to compel, Conti's affidavit
described the documents as follows:

 PTM-0046 - Communications to Toyota counsel for the purpose of requesting legal
advice or of facilitating the rendition of professional legal service.

 PTM-0077 - Communications made or received by in-house attorneys and by
outside counsel generally addressing scheduling or technical matters.

 PTM-0081 - Attorneys' memoranda or handwritten notes, either original notes or
notes on a document under review by the attorney regarding matters on
which the attorneys had been requested to provide legal advice.

 PTM-0083, PTM-0084, PTM-0085 - Drafts of documents sent to attorneys for review
and analysis. "[T]he collection of drafts contain, through the progression of
changes in the drafts, input from Toyota's attorneys, including me. My
handwritten notes are on several of the drafts." The final draft was produced
during discovery.


 Conti's affidavit states "each of the documents contains a communication or work
product that was intended to be confidential, that was kept confidential within the offices of
[Toyota], Toyota's outside counsel, and consultants to Toyota's attorneys, and that was made
or created for the purpose (a) of requesting legal advice and legal services, (b) of providing
legal advice and legal services, or (c) of facilitating the rendition of professional services."
Conti also verifies that the descriptions provided for each of the documents on the privilege
log are truthful and accurate.

 The trial court requested copies of the documents in order to conduct an in camera
inspection. At the conclusion of its inspection, the trial court separated the documents into
"privileged" and "nonprivileged" stacks and ordered the production of the "nonprivileged"
documents. Toyota objects to the production order. 

STANDARD OF REVIEW

 Mandamus relief is available when a trial court abuses its discretion by erroneously
ordering the disclosure of privileged information. Walker v. Packer, 827 S.W.2d 833, 843
(Tex. 1992). A trial court abuses its discretion with regard to factual matters if the trial court
could reasonably have reached only one decision. Id. at 840. With respect to legal
principles, an abuse of discretion occurs if the trial court clearly fails to analyze or apply the
law correctly. Id. In this case, we are concerned with the trial court's application of the
attorney-client privilege and the work product privilege.

 The scope of the attorney-client privilege is defined by Rule of Evidence 503. Tex.
R. Evid. 503. Under Rule 503, a client may refuse to disclose confidential communications
between the client and the attorney made for the purpose of facilitating the rendition of
professional legal services to the client. Id. The privilege is intended to allow unrestrained
communication and contact between attorney and client in all matters in which the attorney's
professional advice or services are sought, without fear that these confidential
communications will be disclosed by the attorney, voluntarily or involuntarily, in any legal
proceeding. Huie v. DeShazo, 922 S.W.2d 920, 922 (Tex. 1996). The privilege thus
promotes effective legal services, which in turn promotes the broader societal interest of the
effective administration of justice. Id. While the attorney-client privilege extends to an
entire communication, including facts contained therein, a person cannot cloak a material
fact with the privilege merely by communicating it to an attorney. Id. However, this does
not mean that the factual matters must be produced by producing the privileged
communication containing the facts. As one court has explained:

 We agree that the relevant facts of a case may not be hidden under the guise
of privilege. However, those facts are discoverable through other proper
means of discovery, without forcing the production of a privileged document
which may also contain that factual information. . . . Once it is established
that a document contains a confidential communication, the privilege extends
to the entire document, and not merely the specific portions relating to legal
advice, opinions, or mental analysis. It is inconceivable that an attorney could
give sound legal advice on a client's case if he or she did not include an
application of the law or opinion to the specific facts of that case. If we were
to hold that all or part of a document containing privileged information should
be disclosed because it also included facts pertinent to the lawsuit, the purpose
of the attorney-client and work-product privileges would be annihilated. The
ultimate effect of such a holding would be that clients would be reluctant to
give their attorneys any factual information for fear that it would be subject to
discovery. And no attorney could even begin to prepare a case for trial, or be
able to give sound advice for lack of those facts. Such a chilling intervention
into the attorney-client relationship under the guise of "looking for facts,"
pierces the core of a critical privilege to carve out limited and usually
superfluous morsels of discovery otherwise obtainable. In our opinion, the
cost is too great.

Pittsburgh Corning Corp. v. Caldwell, 861 S.W.2d 423, 425 (Tex. App.-Houston [14th
Dist.] 1993, orig. proceeding). Thus, we must look to the nature of the communication to
determine whether the attorney-client privilege applies.

 The scope of the work product privilege is defined by Rule 192.5 of the Rules of Civil
Procedure. Tex. R. Civ. P. 192.5. Rule 192.5 defines work product as:

 (1) material prepared or mental impressions developed in anticipation of
litigation or for trial by or for a party or a party's representatives, including the
party's attorneys, consultants, sureties, indemnitors, insurers, employees, or
agents; or

 (2) a communication made in anticipation of litigation or for trial between a
party and the party's representatives or among a party's representatives,
including the party's attorneys, consultants, sureties, indemnitors, insurers,
employees, or agents.


Tex. R. Civ. P. 192.5(a). "To determine when a party reasonably anticipates or foresees
litigation, the trial court must look to the totality of the circumstances and decide whether
a reasonable person in the party's position would have anticipated litigation and whether the
party actually did anticipate litigation." In re Monsanto Co., 998 S.W.2d 917, 924 (Tex.
App.-Waco 1999, orig. proceeding).

 Rule 192.5 encompasses two types of work product. Core work product is defined
as "the work product of an attorney or an attorney's representative that contains the
attorney's or the attorney's representative's mental impressions, opinions, conclusions, or
legal theories." Tex. R. Civ. P. 192.5(b)(1). Core work product is not discoverable. Id.
Any other work product is discoverable only upon a showing that the party seeking discovery
has substantial need of the materials in the preparation of the party's case and that the party
is unable without undue hardship to obtain the substantial equivalent of the material by other
means. Tex. R. Civ. P. 192.5(b)(2). (2) 

DISCUSSION

1. PTM-0046

 PTM-0046 contains the results of several steer tests on different model cars. The
privilege log identifies the document as three copies of data selected and organized by
Toyota legal personnel. The first copy contains handwritten notes of Toyota's in-house
counsel, noting the particular tests counsel identified for further review. The third copy is
preceded by a fax cover sheet from Toyota's in-house counsel, indicating the test result was
sent to outside counsel. Conti's uncontroverted affidavit states the test results were sent to
counsel for the purpose of requesting or facilitating legal advice.

 In view of the uncontroverted affidavit, we conclude PTM-0046 consists of
communications from Toyota to its attorneys for the purpose of facilitating legal services.
Although the communications contain material relevant facts, the plaintiffs must find another
discovery approach to obtain those test results. See Caldwell, 861 S.W.2d at 425.
Otherwise, Toyota would be reluctant to give its attorneys any factual information for fear
that the entire communication would be subject to discovery. Id.

 The trial court only excluded the fax cover sheet. We hold the trial court abused its
discretion in ordering the production of PTM-0046.

2. PTM-0077

 PTM-0077 is a series of documents relating to the acquisition of four 4Runner
vehicles and the shipment of those vehicles to Japan. One of the correspondents is
Susan/Suzanne McCann, Toyota's attorney. Conti's affidavit does not conclusively establish
that the other two correspondents, Nippon Express (Andy Palencia) and Car & Truck Locator
(Art Butler), must be considered Toyota's representatives for purposes of the work product
privilege. Therefore, in deference to the trial court's determination of factual matters, we
hold the trial court could reasonably have determined that Palencia and Butler were not
Toyota's representatives.

 We have organized, identified, and considered each document series as follows:


 
 (PTM-0077-1 - PTM-0077-3) Three page fax from Palencia to McCann - not
a communication between Toyota and its attorney and not a communication
between Toyota and its representative or among its representatives. This
document is discoverable.

 (PTM-0077-4 - PTM-0077-10) Fax from McCann to Palencia - not a
communication between Toyota and its attorney and not a communication
between Toyota and its representative or among its representatives. This
document is discoverable.

 (PTM-0077-11 - PTM-0077-13) Fax from Conti to McCann - communication
between Toyota's attorneys. This document is privileged.

 (PTM-0077-14 - PTM0077-15) Fax from Palencia to McCann - not a
communication between Toyota and its attorney and not a communication
between Toyota and its representative or among its representatives. This
document is discoverable.

 (PTM-0077-16 - PTM0077-17) Internal check request by McCann - internal
communication among Toyota's representatives. This document is privileged.

 (PTM-0077-18) Fax quote sheet from Palencia to McCann - not a
communication between Toyota and its representative or among its
representatives. This document is discoverable.

 (PTM-0077-19 - PTM-0077-20) Fax from McCann to Butler - not a
communication between Toyota and its representative or among its
representatives. This document is discoverable.

 (PTM-0077-21) Letter from McCann to Butler - not a communication between
Toyota and its representative or among its representatives. This document is
discoverable.

 (PTM-0077-22) Letter from Conti to Nippon Express - not a communication
between Toyota and its representative or among its representatives. This
document is discoverable.

 (PTM-0077-23) Certificate of Title. This appears to be the enclosure for
PTM-0077-21. This document is discoverable.

 (PTM-0077-24 - PTM-0077-26). Fax from McCann to Palencia - not a
communication between Toyota and its representative or among its
representatives. This document is discoverable.

 (PTM-0077-27) Quote Sheet from Nippon Express to McCann - not a
communication between Toyota and its representative or among its
representatives. This document is discoverable.

 (PTM-0077-28) Fax from McCann to Butler and Palencia - not a
communication between Toyota and its representative or among its
representatives. This document is discoverable.

 (PTM-0077-29) Letter from Toyota to McCann - communication between
Toyota and its attorney. This document is privileged.

 (PTM-0077-30) - E-mail from Conti to Toyota legal assistant and McCann -
communication among Toyota's representatives. This document is privileged.

 


 In summary, the following documents in this group are privileged: (1) PTM-0077-11
through PTM-0077-13; (2) PTM-0077-16 and PTM0077-17; (3) PTM-0077-29; and (4)
PTM-0077-30. The trial court properly protected PTM-0077-11 through PTM-0077-13. The
trial court abused its discretion in ordering the production of PTM-0077-16, PTM-0077-17,
PTM-0077-29, and PTM-0077-30.

3. PTM-0081

 Conti's affidavit includes PTM-0081 in a list described as memoranda or notes
prepared by Toyota's attorneys regarding matters on which the attorney had been requested
to provide legal advice. The privilege log states that PTM-0081 consists of materials
prepared and organized in a binder by and at the request of Toyota's attorneys regarding
matters that were at issue in pending and anticipated litigation. The log further provides that
the binder contains legal and technical materials selected by Toyota's attorney in order to
analyze the legal implications of testing conducted in mid-September 2000.

 A review of the document reveals that it is a notebook consisting of information
collected by attorney McCann about the types of vehicles involved in pending litigation or
in investigations in anticipation of litigation. She includes communications regarding the
purchase of similar vehicles and equipment for testing, arranging for consultants and test
sites, and coordinating and analyzing the test results. In short, it appears McCann was
responsible for coordinating the testing of various vehicles that were or were anticipated to
be the subject of litigation. 

 The trial court split the binder apart and ordered the production of specific pages.
However, PTM-0081 is clearly a litigation binder prepared by or at the direction of an
attorney, and despite the fact that certain documents contained therein may be subject to
discovery in response to appropriate requests, the binder as a whole should be protected as
work product. As one court has stated:

 The threshold issue can be dispensed with quickly. The binder contains a small
percentage of the extensive documents reviewed by plaintiff's counsel. In
selecting and ordering a few documents out of thousands counsel could not
help but reveal important aspects of his understanding of the case. Indeed, in
a case such as this, involving extensive document discovery, the process of
selection and distillation is often more critical than pure legal research. There
can be no doubt that . . . the binders were entitled to protection as work
product.


James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 144 (D. Del. 1982); see also Berkey
Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. 613 (S.D.N.Y.1977) (holding notebooks
containing "counsel's ordering of the 'facts,' referring to the prospective proofs, organizing,
aligning, and marshaling empirical data" constitute work product).

 The plaintiffs speculate that Toyota is trying to hide pre-existing documents by
including them in the attorney's litigation binder. But there is nothing to indicate that Toyota
has not already produced the relevant factual information in response to other discovery
requests. How Toyota's attorneys decided what vehicles to test, who to employ, and how
it should be done is protected work product. The trial court abused its discretion in ordering
production of the binder. (3)


4. PTM-0083, PTM-0084, PTM-0085

 Conti's uncontroverted affidavit states that PTM-0083, PTM-0084, and PTM-0085
are drafts reports sent to Toyota's attorneys by Toyota's representatives for review and
comment. PTM-0085 contains handwritten notes by Toyota's attorneys. The final version
of the report has been produced to Plaintiffs. These draft reports are factual information
contained in privileged communications and are privileged from discovery. See Caldwell,
861 S.W.2d at 425; see also In re Monsanto, 998 S.W.2d at 931 (finding drafts of patent
applications and letters to EPA sent to attorneys for review and comment privileged). 

 The plaintiffs complain that Toyota should have agreed to produce redacted copies
of the drafts. However, Toyota is correct that a review of the drafts themselves would reveal
the advice and editing provided by the attorneys. The factual information in the drafts is
consistent and has been produced in the final report. The trial court abused its discretion in
ordering the production of PTM-0083, PTM-0084, and PTM-0085.

CONCLUSION

 The trial court abused its discretion by ordering production of PTM-0046, PTM-0077-16 , PTM-0077-17, PTM-0077-29, PTM-0077-30, PTM-0081, PTM-0083, PTM-0084,
and PTM-0085. We conditionally grant the writ of mandamus with respect to the listed
documents and expect that the trial court will modify its order within twenty days of our 

opinion. If the trial court fails to comply, we will issue the writ. All other relief requested
by relators is denied.


 Paul W. Green, Justice

 

Publish
1. Relator complains about the Honorable Andy Mireles, who presided over the hearing on the motion to
compel and issued the order compelling production; however, the proper respondent is the Honorable John Specia,
Jr. (permanent judge of the 225th District Court). See In re Acevedo, 956 S.W.2d 770, 770 n.1 (Tex. App.-San
Antonio 1997, orig. proceeding).
2. Plaintiffs in this case did not make a showing of substantial need or undue hardship; therefore, any
document at issue subject to the work product privilege is not discoverable.
3. The plaintiffs also suggest that because Toyota voluntarily revealed that its attorneys had relevant
information, it should be required to produce that information. Toyota's disclosure of the existence of the litigation
binder was not voluntary; Toyota is required by the Rules of Civil Procedure to reveal what documents it is
withholding under claim of privilege. Plaintiffs' argument is without merit.