Gary FREEMAN, Louis Verneman, Blue Ridge Urological, Frank M. Brown, Katheryn Thornton Brumer; Walter Brosnan, Estate of William Brosnan, J.O. Buchanan, Dr. Kenneth Cosgrove, Dr. Steven Cynn, Y. Eisele, M.D., Galena Park State Bank, George Georgiades, Jr., Jerzy A. Georgiades, Dr. E.B. Goodwin, Donna and Mark Graham, Myron Hamer, Dr. Stweart Hartley, Lester Hess, Jason Holt, Joel Holt, Dr. Stanley E. Holt, Tsugimori Hosono, M.D., Dr. R.C. Irving, Charles N. James, Dr. Robert Jensik, Dr. Daniel Kaplan, Sherwin Kershman, George Klem, D.D.S., Louis Lambrose, Dr. David Lincoln, Samuel McGuire, Peter and Candice Menedis, Alice Morse, George O'Bleness, Dr. W. Boyd Owen, Alfred Piasio, Roger Piasio, Dr. Thomas and Gloria Pope, Drs. Riddle, Lemler, and Holt,

P.A., Pension Plan H, Charles and Frances Scheil, Dr. Cliff Thompson, George and Emmaline Vargish, Vargish International, Inc., Henrick Van Tongeren, Dr. Frederck Wenzel, and Arved White, Relators,

v.

The Honorable Richard P. BIANCHI, Judge of the 333rd District Court of Harris County, Texas, Respondent.

No. 01–91–00754–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 31, 1991.

Larry D. Thompson, Lorance & Thompson, Lynne Liberato, Jeff Nobles, Michelle E. McCoy, Haynes & Boone, Houston, for relators.

Grant Cook, Jerry V. Walker, Jerry Frazier, Steve Andrews, Charles Brown, John Somyak, and Richard L. Ellis, Houston, for respondent.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

SAM BASS, Justice.

Relators, Gary Freeman, et al. ("plaintiffs"), seek an order to have the Honorable Richard P. Bianchi, Judge of the 333rd District Court of Harris County, rescind his order of August 6, 1991, denying plaintiffs' Motion Adopting the Recommendations of Special Master and to Set Aside the Order of October 31, 1990. Real parties in interest are Granada Corporation; Granada Genetics, Inc.; Granada Biosciences, Inc.; Granada Management Corp.; Granada Financial Services, Inc.; Granada Development Corp.; Granada R & D Ventures; David G. Eller; James M. Eller, Jr.; Thomas Easley; Joe M. Massey; Christopher Zakzrewski; Darrold F. McCalla; Robert E. Wilkins; Immuno Modulators Laboratories, Inc., n/k/a Biospectrum, Inc.; and Touche Ross & Co. ("defendants" or "Granada").

The mandamus proceeding centers on a prolonged discovery dispute about documents that defendants claim are shielded from disclosure by the attorney-client and attorney-work product privilege. Relators contend the documents prove their allegations in the underlying lawsuit; that defendants never followed procedural steps necessary to invoke privilege; that certain documents were voluntarily produced to the plaintiffs; that any privilege afforded the documents has been waived by disclosure; and that the documents that are privileged are subject to the "furtherance of crime or fraud" exception ("crime-fraud exception") set forth in Texas Rule of Civil Evidence 503(d)(1) and subject to discovery within the scope of Texas Rule of Civil Procedure 166b(2)(a). Relators assert that respondent abused his discretion in affording blanket protection to the documents and maintain they will have no adequate remedy at law if they cannot use the documents to prove their allegations. Defendants claim the documents were inadvertently, not voluntarily, disclosed and that the attorney-client privilege and work product privileges were not waived. Defendants assert that the crime-fraud exception does not apply to the documents.

The underlying lawsuit is for fraud; denuding a corporation; Texas Securities Act violations; tortious interference with contract; action on contract; failure of consideration; conspiracy; negligence; and violations of the Texas Free Enterprise and Antitrust Act of 1983. Plaintiffs are former shareholders of Immuno Modulation Laboratories, Inc. ("IML"), a company that manufactured and developed applications for interferon. Plaintiffs claim that Granada Corporation acquired a majority of the outstanding shares of IML by fraudulently inducing the shareholders to give up their stock.

## Procedural History

This mandamus action evolved from a discovery request that commenced a three year odyssey through five separate district court judges, two courts of appeals, and the Texas Supreme Court. On June 13, 1988, plaintiffs filed their first request for production of documents from defendants.

In response, defendants' counsel produced approximately 150,000 pages of documents for plaintiffs to review.

Plaintiffs began inspecting the documents on August 10, 1988. During August and September of 1988, plaintiffs marked and designated approximately 18,000 documents for photocopying, including the following memoranda ("the four memoranda"):

(1) Memo from John Watson (an attorney for Granada) to Don Whelley (an officer with the Granada Corporation), dated October 3, 1986, regarding advice and opinions concerning IML's inclusion in the proposed initial public offering ("Memo One").

(2) Memo from John Watson to Don Whelley, dated October 16, 1986, regarding IML/Gangrene sale of assets under the Texas Business Corporations Act ("Memo Two").

(3) Memo from J. Wallace (General Counsel for Granada), dated January 8, 1986, advising of duties of IML under the Texas Business Corporations Act, with attachments ("Memo Three").

(4) Memo from J. Wallace to David Eller (president of Granada), dated January 10, 1986, with advice concerning Texas law on corporate stock splits ("Memo Four").

These four memoranda are among the documents that are the subject of the discovery dispute in this case.

On November 23, 1988, Granada filed a motion for protection with the trial court and attached an index of 104 documents it claimed were privileged and exempt from discovery, including Memo Three and Memo Four. Granada then tendered the 104 documents for in camera inspection on November 28, 1988. Memo One and Memo Two were not listed on the index that claimed privilege and were not produced for in camera inspection. The court took the matter under advisement.

Discovery proceeded, and during depositions taken on September 20 and 21, 1989, plaintiffs tendered Memos One, Two, and Three to Eller, Granada's president. Granada had previously made these three memoranda available to plaintiffs for inspection and photocopying in August and September of 1988.

Plaintiffs' counsel introduced Memo One, without objection, while questioning Eller about the contents of the memorandum. Defendants' attorney did not object until after a break following the testimony. At that time, defendants claimed they first became aware that the four memoranda were in the possession of plaintiffs. On October 13, 1989, defendants filed an amended motion for protection, asking the court to order the four memoranda returned to them.

On November 10, 1989, the parties appeared before the judge of the trial court, the Honorable Felix Salazar, on the defendants' motion for protection. At this hearing, plaintiffs told the court that they possessed approximately 17 other documents the defendants claimed were privileged that had been produced by defendants in August 1988.

Judge Salazar ruled that plaintiffs would be allowed to retain and use the documents during depositions to explore their allegations of fraud. On December 7, 1989, defendants filed a motion to reconsider the court's ruling on the protective order and an alternative motion to appoint a special master.

On February 20, 1990, Judge Salazar signed an order appointing John N. Barnhart as a special master to make findings and recommendations regarding whether the privileges, if any, that attached to the four memoranda had been waived, and whether a total of 215 other documents were, in fact, privileged.

On June 5, 1990, the special master submitted his report. The special master found that the four memoranda were discoverable and were properly in the possession of the plaintiffs; that 73 documents were covered by the crime-fraud exception to the attorney-client privilege; and that four documents were not within the work product privilege and were discoverable.

In September of 1990, Judge Salazar invoked a local rule to transfer the case to the 165th District Court, Judge Ken Harri-

son presiding. On October 31, 1990, Judge Harrison entered an order denying entry of the master's report; granting protection to every document; and ordering all copies of the memoranda returned to defendants' counsel. His order also stated that no witness could be questioned about the four memoranda during discovery; that no reference to the memoranda be made during trial; and that any offer of proof be made outside the presence of the jury.

Plaintiffs filed a petition for writ of mandamus on November 8, 1990, seeking relief from the order of October 31, 1990. While the mandamus proceeding was pending, the Honorable David West, as local administrative judge, transferred the case from Judge Harrison's court to the 157th District Court, Judge Michael Schneider presiding. Granada challenged the transfer by seeking mandamus relief from this Court and from the Texas Supreme Court; their requests were denied by both courts.

On April 2, 1991, this Court overruled plaintiffs' motion for leave to file petition for writ of mandamus, holding that a writ of mandamus would not issue unless Judge Schneider refused to grant plaintiffs the requested relief. On May 1, 1991, plaintiffs filed a motion for entry of an order adopting the recommendations of the special master and to set aside the order of October 31, 1990. On May 7, 1991, Judge Schneider recused himself. The case was then reassigned to respondent's court.

On June 28, 1991, respondent heard plaintiffs' motion for entry of an order adopting the special master's report and to set aside the order dated October 31, 1990. On August 6, 1991, the court denied plaintiffs' motion. Thus, the ruling in Judge Harrison's October 31, 1990, order is again before this Court.

### Bases for Relief

On October 9, 1991, this Court granted relators' motion for leave to file a petition for writ of mandamus and heard oral argument from the parties. Relators present the following claims for our consideration:

(1) The trial court abused its discretion in granting protection to all of the documents because the defendants waived any privilege by their failure to specifically plead and prove privilege.

(2) The trial court abused its discretion in granting protection to four documents (the four memoranda) because the defendants failed to establish the elements of the attorney-client privilege.

(3) The trial court abused its discretion in granting protection to the four memoranda because the defendants did not meet their burden of negating the possibility of waiver by disclosure to third parties.

(4) The trial court abused its discretion in granting protection to the four memoranda, because the defendants voluntarily disclosed these documents and, thus, waived their claims of privilege.

(5) The trial court abused its discretion in granting protection to one document (the January 10, 1986 Wallace memo) (Memo Four), because any privilege was waived by defendants' failure to object timely to its use during a deposition.

(6) The trial court abused its discretion in granting protection to three documents (a list dated March 8, 1987, of IML Assets Purchase, information, and decisions needed to form management; a draft letter dated June 15, 1988, from Granada to J. Georgiades; and a memo dated August 8, 1988, from D. McCalla to D. Eller), because these documents fail to meet the requirements of the work product exemption.

(7) The trial court abused its discretion in granting protection to the four memoranda and 73 other documents because the plaintiffs/relators established a prima facie case of fraud and, thus, the documents come within the crime-fraud exception to the attorney-client privilege.

 A writ of mandamus will issue only to correct trial court actions when there has been a clear abuse of discretion or the violation of a duty imposed by law and when the relator has no adequate remedy on appeal. *West v. Solito*, 563 S.W.2d 240 (Tex.1978). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an ap-

propriate case for the trial court's action. Rather, the question is whether the court acted without reference to any guiding rules and principles and whether the act was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1986), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). A clear abuse of discretion exists when the court's decision is contrary to the one compelled by the facts and circumstances, thereby actually extinguishing any discretion in the matter. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917–18 (Tex.1985, orig. proceeding).

### Privilege Afforded the Documents

■■■ We first consider relators' assertions that defendants waived any claim of privilege by failure to specifically plead and prove privilege as to the documents. In *Peeples v. Honorable Fourth Supreme Judicial District*, 701 S.W.2d 635 (Tex.1985, orig. proceeding), the Texas Supreme Court set out the steps a party must follow to assert privileges.[1] The *Peeples* standard requires any party who seeks to exclude documents from discovery to specifically plead the particular privilege and request a hearing on the party's motion. The trial court must then determine whether an in camera inspection is necessary, and, if so, the party seeking protection must segregate and produce the documents to the court. Failure to follow this procedure waives any complaint of the trial court's action. *Peeples*, 701 S.W.2d at 637.

The exhibits tendered to this Court demonstrate that plaintiffs propounded their request for production of documents on July 13, 1988. On August 10, 1988, defendants filed their response to plaintiffs' first request for production of documents. The response set forth general objections to the request for production, including the following:

1. Defendants object that the definition of "Respondents," "Defendant" and "IML" is so broad as to include counsel for Defendants. Consequently, the definition of "Respondents," "Defendant" and "IML" is objectionable on grounds of the attorney-client and work product privilege.

2. Defendants object to the extent the definition of "Document" purports to require the production of documents protected by the attorney-client or work product privilege.

3. Defendants object to the definition of "Communication" to the extent it purports to require the production of documents protected by the attorney-client or work product privilege. . . .

4. Defendants object to all of Plaintiffs' individual requests to the extent that they purport to compel the production of documents protected by the attorney-client or work product privileges.

Defendants filed a motion for protection on November 23, 1988. Pursuant to the motion, the defendants tendered 104 documents to the court for in camera inspection on November 28, 1988. Memo One and Memo Two were not tendered to the court, at this time. Judge Salazar took the matter under advisement. On October 13, 1989, defendants filed their amended motion for protection, claiming that the four memoranda were protected from disclosure by the attorney-client and work product privileges. The defendants tendered 115 documents to the court for in camera inspection and reasserted their claims of privilege as to the 104 documents previously submitted to the court. In support of their claim of privilege, defendants attached the affidavit of their attorney.

We find that defendants timely and properly asserted a claim of privilege only as to the documents that were tendered to the court for in camera inspection. Respondent did not clearly abuse his discretion in finding that documents that were tendered for in camera inspection were privileged. However, any documents not segregated and produced to the court were not exempt-

---

1. Rule 166b(4) codifies, with minor changes, the steps first articulated in *Peeples*. The rule requires a specific pleading of the "particular ex-

emption or immunity from discovery relied upon by the objecting party." 701 S.W.2d at 637; Tex.R.Civ.P. 166b(4).

ed from discovery or admissibility by virtue of privilege, *Peeples*, 701 S.W.2d at 637, as defendants failed to follow the necessary procedural steps to preserve their claims of privilege. We find that respondent clearly abused his discretion in refusing to rescind the order granting protection to documents that were not privileged, in accordance with Texas law.

### Waiver of Privilege

We next consider whether defendants waived a claim of privilege as to documents that were privileged, but were disclosed to plaintiffs by counsel for defendants. In their verified petition for writ of mandamus, relators state that they began reviewing the documents on August 29, 1988, and that they marked and photocopied approximately 18,000 documents in August and September of 1988. *These documents included the four memoranda.* As noted above, defendants filed their motion for protection in November 1988. The motion for protection claimed the attorney-client or work product privilege for numerous documents that had already been disclosed to plaintiffs.

Defendants failed to file an amended motion for protection until October 13, 1989, almost a year after the documents were disclosed to the plaintiffs. In their amended motion for protection, defendants stated:

> (1) Commencing on August 29, 1988, Defendants produced all relevant, responsive and nonprivileged documents to Plaintiffs' counsel for their review.
>
> (2) Before giving Plaintiffs' lawyers access to any documents, Defendants' counsel reviewed the sixty (60) boxes of documents. The purpose of that review was to identify documents not subject to discovery and particularly those protected by the attorney/client privilege ... Effort was made to examine each page contained in these boxes.
>
> (3) Again, prior to producing any documents to Plaintiffs' lawyers, Defendants' counsel initially discovered and removed from the files approximately 600 documents which were claimed to be protected by the attorney/client privileges....

In support of their claims of privilege and of lack of waiver, defendants attached the affidavit of their attorney, Robert A. Plessala. In his affidavit, Plessala stated that in August of 1988, Granada Corporation and Granada Genetics, Inc. delivered 56 boxes of documents to his office for review prior to making any documents available to plaintiffs. He claimed that he "undertook to review the files personally" and that he "gave Plaintiffs' counsel access to only those boxes to which I had completed my review." Later in the affidavit, Plessala states:

> Until Plaintiffs took the deposition of Mr. David Eller recently, I was totally unaware that during Plaintiffs' document review in August and September of 1988, they had obtained copies of any privileged documents ... After reviewing the file, I am sure that Plaintiffs' counsel came into possession of the four memorandum at issue in Defendants' Amended Motion for Protection by inadvertence or oversight on my part ... I must have overlooked the file during my review.

Eller's deposition took place on September 20 and 21 of 1989, more than one year after the documents were disclosed to plaintiffs.

In response to the petition for mandamus, defendants argue that their counsel informed plaintiffs' lawyers "before, during, and after" they reviewed defendants' documents that it was defendants' intention to withhold any piece of paper with a lawyer's name on it; that once the plaintiffs reviewed the documents, all counsel would meet and determine what agreements could be reached concerning what documents would be withheld; and that, at an October 1988 meeting, counsel for plaintiffs and defendants met and reached an agreement about what documents would be released and what documents would be withheld from production based on privilege; and that documents on which an agreement could not be reached were tendered to the court for in camera inspection on November 28, 1988.

■ While agreements between parties are desirable, and the actions of attorneys are not infallible, we cannot give legal effect to agreements not in compliance with the Rules of Civil Procedure. Nor will we interpret the concept of waiver, as set forth in the Texas Rules of Civil Evidence, to excuse an attorney's disclosure of documents he claims are privileged when he admittedly undertook to review the documents "personally" and had a full year to claim the privilege was not waived.

Rule 11 of the Texas Rules of Civil Procedure provides:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

We interpret the language "touching any suit pending" to include agreements concerning discovery matters. The Texas Supreme Court, in analyzing the applicability of Rule 11, stated: "A better statement of the general rule is that Rule 11 is a minimum requirement for enforcement of all agreements concerning pending suits...." *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex.1984).

Our review of the exhibits reveals that only one document concerning discovery was signed by counsel for both parties. In a letter of November 15, 1988, from Plessala to counsel for plaintiffs, Thompson and Ellison, Plessala claims the attorney-client privilege applies to a letter from Watson to "Zak" [hereinafter cited as the "Watson–Zak letter"].[2] Though Plessala's letter is signed by Plessala, Thompson, and Ellison, no language stating that the parties *agreed that the attorney-client privilege applied to the Watson–Zak letter* is set forth in the document. The letter concludes: "I believe all of this adequately summarizes the status of discovery to date. Except for issues which are to be resolved at our hearing before Judge Salazar, it is my belief that we have now resolved all outstanding issues pertaining to discovery to date. If you so agree please indicate the same by signing below." The Plessala letter does not contain any specifics on what issues or agreements were reached by the parties.

We have no evidence that indicates the Plessala letter was filed with the trial court, as required by Rule 11. We hold that any agreements reached by the parties are unable to support the defendants' claims of privilege and cannot be utilized to demonstrate that disclosure of the documents to plaintiffs did not constitute waiver.

We next consider defendant's contention that unintentional, inadvertent disclosure negates waiver of privilege. We begin this analysis by reiterating our holding that defendants' claims of privilege attached only to those documents tendered for in camera inspection at the November 28, 1988, hearing.

■ The attorney-client privilege protects confidential communications between an attorney and client. Tex.R.Civ.Evid. 503. The key to the continued availability of the privilege is maintenance of that confidentiality. Even though a communication is made in confidence, the privilege may be lost or impliedly waived by disclosure of the communication. *See Eloise Bauer & Assoc., Inc. v. Electronic Realty Assoc., Inc.*, 621 S.W.2d 200, 204 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.) (voluntary production of letter waived privilege).

This waiver rule is codified in the Texas Rules of Civil Evidence, as follows:

> A person upon whom these rules confer a privilege against disclosure waives the privilege if (1) he or his predecessor while holder of the privilege *voluntarily discloses or consents to disclosure of any significant part of the privileged matter* unless such disclosure itself is privileged....

Tex.R.Civ.Evid. 511 (emphasis added). Thus, Rule 511 sets forth the circumstances under which disclosure constitutes waiver of privilege. Rule 512 is the con-

---

**2.** The reference is to the following document, included in the list of documents submitted to Judge Salazar for in camera inspection: "Letter dated 12/30/87 from J. Watson to C. Zakrzewski re: SEC documents with respect to Novaferon Labs. Attached: SEC documents."

verse of Rule 511, limiting the types of disclosure that rise to the level of waiver, providing:

> A claim of privilege is not defeated by a disclosure which was (1) compelled erroneously or (2) made without opportunity to claim the privilege.

TEX.R.CIV.EVID. 512.

■ Neither rule of evidence addresses intent when disclosure is made. It is the rule in Texas that the protections afforded by a privilege are waived by voluntary disclosure of the privileged documents. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District*, 701 S.W.2d 644, 649 (Tex.1985, orig. proceeding). In the context of the Rules of Civil Evidence, we do not interpret the term "voluntary" to encompass only disclosures that are made intentionally and knowingly. Such an interpretation would be more fitting for analysis under a criminal law standard. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ We look only to whether the disclosure was involuntary or was compelled erroneously or made without opportunity to claim the privilege. *Gulf Oil Corp. v. Fuller*, 695 S.W.2d 769, 773–74 (Tex.App.—El Paso 1985, orig. proceeding). The evidence before this Court is undisputed that disclosure was made voluntarily and was neither compelled nor made without opportunity to raise a claim of privilege. Plessala's affidavit speaks to the fact that he personally reviewed the documents and that he gave plaintiffs access only to specific boxes of documents that he had reviewed. Defendants' amended motion for protection was not filed until nearly one year after disclosure was made to plaintiffs. We hold that defendants waived any privilege that attached to the documents submitted for in camera review that had been disclosed to plaintiffs in August and September of 1988.

Based on our ruling, defendants may claim the attorney-client or work product privilege to exempt documents from discovery and admissibility only for those documents that: (1) were tendered for in camera inspection *and* (2) were not disclosed to plaintiffs in August and September of 1988. We hold that any claim of privilege regarding the four memoranda was waived by defendants' disclosure of these documents to the plaintiffs. Thus, the four memoranda are subject to discovery and are, therefore, properly within the possession of the plaintiffs.

### Furtherance of Crime or Fraud Exception

Relators contend that the trial court abused its discretion in granting protection to the four memoranda and to 73 other documents because the plaintiffs established a prima facie case of fraud and, thus, the documents come within the crime-fraud exception to the attorney-client privilege. *See Forscan v. Touchy*, 743 S.W.2d 722, 727 (Tex.App.—Houston [14th Dist.] 1987, orig. proceeding). The crime-fraud exception provides there is no privilege "if the services of a lawyer were sought or obtained to enable anyone to commit or plan to commit what the client knew or reasonably should have known to be ... fraud." TEX.R.CIV.EVID. 503(d). *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (elements of actionable fraud). Further, the crime-fraud exception applies to a claim of work product priviliege. Rule 166b(3)(a) of the Texas Rules of Civil Procedure protects the work product of an attorney from disclosure, "subject to the exceptions of Texas Rules of Civil Evidence 503(d)."

■ A party who asserts the exception must first establish a prima facie case, showing a violation sufficiently serious to defeat the privilege. *Williams v. Williams*, 108 S.W.2d 297, 299–300 (Tex. Civ.App.—Amarillo 1937, no writ). Second, the court must find some valid relationship between the document under question and the prima facie violation. *In re Sealed Case*, 676 F.2d 793, 812–16 (D.C.Cir.1982).

■ The prima facie showing is a matter for the court to determine. *Williams*, 108 S.W.2d at 300. The plaintiffs' prima facie showing is sufficient if it sets forth evidence that, if believed by the trier of fact, would establish the elements

of a fraud that was ongoing or about to be committed when the document was prepared. *In re Sealed Case,* 676 F.2d at 815. The evidence must set forth sufficient proof to support a finding if evidence to the contrary is disregarded. *In re International Sys. & Controls Corp. Sec. Lit.,* 693 F.2d 1235, 1242 (5th Cir.1982).

 The documents themselves may be utilized to establish a prima facie case. *See, e.g., Doctor's Hosp. v. West,* 765 S.W.2d 812, 814 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding). Based on our review of documents submitted with the petition, we hold that relators made a prima facie showing of fraud, which was sufficient to bring documents that bear a relationship to the alleged fraud within the crime-fraud exception to the attorney-client and work product privileges.

Further, although we were unable to ascertain what specific documents remain privileged and exempt from discovery, pursuant to our holding that defendants waived the privilege for documents that were disclosed to plaintiffs, we find that the following 62 documents demonstrate an alleged fraud that is the subject of the underlying lawsuit: 0000030, 0000133, 0000139, 0000198, 0000202, 0000253, 0000204, 0000282, 0000289, 0000292, 0000305, 0000891, 0000903, 0000995, 0000355, 0000996, 0000394, 0000922, 0000380, 0000516, 0000519, 0000278, 0000417, 0000522, 0000650, 0000529, 0000663, 0000673, 0000658, 0000712, 0000735, 0000744, 0000737, 0000784, 0001353, 0000790, 0000808, 0000810, 0000822, 0000838, 0000828, 0000857, 0000869, 0000919, 0000925, 0000844, 0000876, 0000872, 0000678, 0000680, 0001004, 0001214, 0001013, 0000534, 0000738, 0000942, 0001002, 0000012, 0000022, 0000682, 0000113, 0000774. Respondent clearly abused his discretion in denying relators access to the above-listed documents.

## Conclusion

We also hold that relators will not have an adequate remedy by way of appeal if respondent's order affording blanket protection to the documents is allowed to stand. The action of respondent effectively prevents relators from maintaining their cause of action. Evidence exempted from discovery will not appear in the record; therefore, on appeal, it is unlikely relators will be able to show that the trial court's errors were reversible under Rule of Appellate Procedure 81(b)(1). *See Jampole v. Touchy,* 673 S.W.2d 569, 576 (Tex.1984).

We conditionally grant the writ of mandamus and order Judge Bianchi to vacate his order denying plaintiffs' Motion for Entry of Order Adopting Recommendations of Special Master and to Set Aside Order of October 31, 1990, and order Judge Bianchi to enter an order consistent with this opinion:

(1) Documents not tendered to the trial court for in camera inspection are not protected from discovery or admissibility by claims of attorney-client or work product privileges;

(2) All claims of privilege are waived for documents produced to plaintiffs in August and September of 1988;

(3) The following documents are subject to discovery under the crime-fraud exception: 0000030, 0000133, 0000139, 0000198, 0000202, 0000253, 0000204, 0000282, 0000289, 0000292, 0000305, 0000891, 0000903, 0000995, 0000355, 0000996, 0000394, 0000922, 0000380, 0000516, 0000519, 0000278, 0000417, 0000522, 0000650, 0000529, 0000663, 0000673, 0000658, 0000712, 0000735, 0000744, 0000737, 0000784, 0001353, 0000790, 0000808, 0000810, 0000822, 0000838, 0000828, 0000857, 0000869, 0000919, 0000925, 0000844, 0000876, 0000872, 0000678, 0000680, 0001004, 0001214, 0001013, 0000534, 0000738, 0000942, 0001002, 0000012, 0000022, 0000682, 0000113, 0000774. Included are attachments to each listed document.

In all other respects, relief is denied. We are confident that Judge Bianchi will rescind his order of August 6, 1991, and will enter an order consistent with this opinion. The writ of mandamus will issue

only if Judge Bianchi fails to comply with our Order.