IN RE NATURAL GAS PIPELINE, ET AL.

NO. 07-00-0375-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 2, 2000

______________________________

IN RE NATURAL GAS PIPELINE COMPANY OF AMERICA,

    MID-CON GAS SERVICES CORPORATION, AND

    CHESAPEAKE PANHANDLE LIMITED PARTNERSHIP,

Relators

_________________________________

ORIGINAL PROCEEDING FOR WRIT OF MANDAMUS

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Relators, Natural Gas Pipeline Company of America, Mid-Con Gas Services Corporation, and Chesapeake Panhandle Limited Partnership (collectively referred to as NGP unless otherwise specified by the use of any Relator’s full name) petition for a writ of mandamus against the Honorable Ronald E. Enns, Judge of the 69
th
 Judicial District Court.  Through the petition, NGP requests that we order Judge Enns to vacate various orders entered in Cause Nos. 97-70, 98-30, 98-33, 98-35, 98-36, 98-47, 98-48, 98-49, 98-50, 98-51 and 98-70.  The first order was issued on May 25, 2000 and 1) granted a motion to overrule the privilege objections asserted by NGP to certain testimony of John Griffin (Griffin) and Bernard Kuhn (Kuhn) and 2) denied NGP’s motion to determine the existence of privilege.  The second order was issued on July 5, 2000 and denied NGP’s motion for reconsideration.  We deny the petition.

Standard of Review

It has long been the rule that mandamus is an extraordinary remedy.  
Canadian Helicopters, Ltd . v. Wittig
, 876 S.W.2d 304, 305 (Tex. 1994).  Simply put, it does not issue as a matter of course or simply because one desires same.  Rather, its issuance is contingent upon the satisfaction of at least two specific criteria.  Those criteria are 1) that the trial court clearly abused its discretion in acting or failing to act in a particular manner and 2) that the applicant has no adequate remedy at law.  
In re Daisy Mfg. Co.
, 17 S.W.3d 654, 658 (Tex. 2000); 
Canadian Helicopters, Ltd . v. Wittig
, 876 S.W.2d at 305; 
Walker v. Packer
, 827 S.W.2d 833, 839 (Tex. 1992);
 Street v. Second Court of Appeals
, 715 S.W.2d 638, 639 (Tex. 1986).   Moreover, the heavy burden of satisfying both prongs lies with the party seeking relief.  
Canadian Helicopter, Ltd. v. Wittig
, 876 S.W.2d at 305.  That is, as to the first prong (clear abuse of discretion), the relator must establish that the court had but one course of conduct to undertake given the circumstances involved, that same was demanded of the court, and that the court refused to pursue it.   
See
 
O’Connor v. First Court of Appeals
, 837 S.W.2d 94, 97 (Tex. 1992) (holding that the existence of a legal duty to perform a nondiscretionary act and a demand for performance coupled with refusal by the court are three prerequisites to mandamus); 
Doctors Hosp. Facilities v. Fifth Court of Appeals
, 750 S.W.2d 177, 178 (Tex. 1988) (holding the same).

As to the second prong, the relator’s burden entails more than merely showing that reversible error occurred.  As recognized by our Supreme Court, “the mere fact that a trial court has committed reversible error is not sufficient by itself to warrant mandamus relief.”  
In re Masonite Corp.
, 997 S.W.2d 194, 199 (Tex. 1999).  So too must the relator do more than illustrate that the order is interlocutory and, therefore, not subject to an immediate appeal.  In view of the extraordinary nature of the relief at issue, the relator must establish not only the absence of opportunity to immediately appeal, but also the existence of irreparable harm if immediate relief is withheld.  
Canadian Helicopters, Ltd. v. Wittig
, 876 S.W.2d at 306.  And, the latter “requirement is met only when parties are in danger of permanently losing substantial rights,” 
id., 
or when the effects of the error could not be cured on appeal.  
Walker v. Packer
, 827 S.W.2d at 843.
(footnote: 1)
Background

The discovery in question involves the testimony of Griffin and Kuhn.  These individuals were employees of Natural Gas Pipeline Company and Mid-Con Gas Services Corporation.  During their tenure, they were privy to conversations pertaining to whether their employers’ oil and gas leases on certain realty had terminated due to the cessation of production.  Allegedly present during all or part of those conversations were various legal counsel of NGP.  Furthermore, topics such as whether the leases had indeed terminated 

and what to do if they had were discussed.  Plaintiffs’ counsel
 solicited
 excerpts of those conversations during depositions in the aforementioned lawsuits.  

NGP asserted that the excerpts in dispute fell within the attorney-client and work- product privileges and, as such, they were purportedly undiscoverable.  The plaintiffs disputed this, claiming, among other things, that NGP waived the privileges and that the conversations fell within an exception to those privileges.  The latter included the crime-fraud and offensive use doctrines.

Upon hearing the argument of counsel, the trial court eventually rejected NGP’s position and permitted discovery of the excerpts.  The basis upon which it acted, however, went unmentioned.  Given this, our task is to determine whether any of the grounds upon which the trial court could have relied were legitimate.

Crime-Fraud Exception

The ground which we initially peruse is the crime-fraud exception found at Rule 503(d)(1) of the Texas Rules of Evidence.  There we are told that the attorney-client privilege does not apply to communications if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.  
Tex. R. Evid
.
 503(d)(1).  If within the exception, the communication is protected by neither the attorney-client nor work-product privilege.  
Id.
; 
Freeman v. Bianchi
, 820 S.W.2d 853, 861 (Tex. App.--Houston [1st Dist.] 1991, 
orig. proc.
) (holding that the crime-fraud exception applies to a claim of work-product privilege); 
Tex. R. Civ. P
.
 192.5(c)(5) (stating that any work product created under circumstances within an exception to the attorney-client privilege in Rule 503(d) is not work product protected from discovery).  

Next, the burden to prove that a communication falls within the exception lies with the party seeking disclosure.   
Volcanic Gardens Mgt. Co. v. Paxson
, 847 S.W.2d 343, 347 (Tex. App.--El Paso 1993, 
orig. proceeding
).  Furthermore, the latter is obligated to satisfy two requirements.  First, he must present evidence sufficient to create a 
prima facie
 showing of a fraud or crime that was ongoing or about to occur when the communications at issue arose.  
Id.
; 
Freeman v. Bianchi
, 820 S.W.2d at 861-62.  Second, a nexus between the fraud-crime and the communication must also be established.  
Id.
; 
Granada Corp. v. First Court of Appeals
, 844 S.W.2d 223, 227 (Tex. 1992).  That is, the proponent must illustrate that the attorney’s services were obtained in aid of committing or perpetuating the fraud or crime.
(footnote: 2)  
Tex. R. Evid
.
 503(d)(1); 
Cigna Corp. v. Spears
, 838 S.W.2d 561, 569 (Tex. App.--San Antonio 1992, 
orig. proceeding
); 
Williams v. Williams
, 108 S.W.2d 297, 299-300 (Tex. Civ. App.--Amarillo 1937, no writ).   Whether these requirements have been met is a question of law for the court to decide.  
Volcanic Gardens Mgt. Co. v. Paxson
, 847 S.W.2d at 347; 
Freeman v. Bianchi
, 820 S.W.2d at 861.  Incidentally, the communications sought to be suppressed may themselves be used to establish the 
prima facie
 case.  
Freeman v. Bianchi
, 820 S.W.2d at 853.  

In applying the foregoing to the circumstances before us, we note that prior to the communications at issue, Natural Gas Pipeline Company had obtained information indicating that its leases had terminated.  Indeed, according to the alleged privileged evidence
, that the leases had terminated and the rights thereunder had reverted to the landowners appeared to be the general consensus of those inside that company.  Thus, the company convened meetings with one or more of its legal counsel to determine what to do.  During those meetings, alternatives were discussed.  The one selected, however, involved doing nothing.  Instead, as depicted by the communications which NGP attempts to withhold, Natural Gas Pipeline Company decided to operate under leases generally believed to be invalid and take minerals to which they had no right.  Moreover, and as also depicted by the discovery at issue, this option was chosen because Natural Gas Pipeline Company’s legal counsel 1) deemed the lessors too unsophisticated to discover the situation and 2) thought limitations would minimize company exposure should the conduct be discovered.  Simply put, there is some evidence of record upon which a fact-finder could reasonably conclude that NGP was taking property owned by another without the effective consent of the owner.  That its actions were knowing and intentional also finds support in the record.   Given this, evidence appears of record which the trial court could have held established a 
prima facie
 case illustrating that NGP, through its officers and legal counsel, engaged in theft, fraud, or like effort to take advantage of others through the suppression of the truth, by trick, or by unfair way.  And, to the extent that the communications at issue themselves evince the conscious decision to so engage in that conduct, the trial court could have also concluded that the discovery fell within the crime-fraud exception discussed above.  
Thus, we must conclude that Judge Enns did not abuse his discretion in denying NGP’s claims of attorney-client and work-product privilege.
(footnote: 3)   

The petition for writ of mandamus is denied.  

Brian Quinn

    Justice

Do not publish.

FOOTNOTES
1:
1
For instance, 
an appellate court cannot cure the error when a trial court erroneously orders disclosure of privileged information that materially affects the rights of the aggrieved party.  
Walker v. Packer
, 827 S.W.2d 833, 843 (Tex. 1992
)
.

2:
2
For purposes of the exception, the fraud contemplated has been accorded broad definition.  Not only does it include common law fraud and criminal fraud but also “‘all multifarious means which human ingenuity can devise and which are resorted to . . . to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning dissembling, and any unfair way by which another is cheated.’” 
Volcanic Gardens Mgt. Co. v. Paxson
, 847 S.W.2d 343, 347 (Tex. App.--El Paso 1993, 
orig. proceeding
).   

3:
3
Our holding 
viz
 the crime-fraud exception relieves us from having to consider the other grounds upon which the trial court could have allegedly based its decision.