TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-04-00069-CR






Natalie Jean Woody, Appellant


v.


The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY

NO. 31210, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Appellant Natalie Jean Woody appeals the trial court's order deferring adjudication
after her motion to suppress based on an alleged infringement of her attorney-client privilege was
denied. We will affirm the order.

BACKGROUND

 On February 11, 2002, Woody was scheduled to appear in court for a hearing on
burglary charges. See Tex. Pen. Code Ann. § 30.02 (West 2003). Woody failed to appear, but Dawn
Meredith, the attorney of record, apparently notified the court that Woody's failure to appear may
have been due to medical reasons. (1) The court informed Meredith that it would delay issuing a
warrant for a few days to give Meredith the opportunity to obtain a letter from Woody's doctor
verifying that explanation for Woody's absence. The record suggests that the warrant may have
subsequently issued.

 Approximately two weeks later, a note written on the letterhead of Robert M. Walters,
M.D., was faxed to Meredith. (2) The note stated that Woody had been treated by Dr. Walters at
Austin's Seton Medical Center on February 11. To verify the note's authenticity, Meredith called
Dr. Walters's office; an employee verified that the note was authentic. (3) Meredith then made a series
of phone calls to locate the trial court judge, the Honorable Jack Robison, whose district includes
not only Caldwell County, but also Comal and Hays counties. She located Judge Robison in Comal
County and faxed the note, along with a cover letter and an x-ray, to a court employee for delivery
to the judge. (4) In her cover letter, Meredith requested that the trial court withdraw the warrant issued
for Woody's failure to appear at the February 11 hearing.

 Approximately thirty minutes later, Dr. Walters called Meredith and informed her that
he did not write the note. (5) Meredith immediately called the court employee to whom she had faxed
the documents in an attempt to intercept or retract them. The employee advised her that he had
already given the documents to Judge Robison. Meredith then informed the court employee that she
believed the note purporting to be from Dr. Walters may have been a forgery.

 Subsequently, Woody was charged by information for the offense of forgery. See id.
§ 32.21 (West Supp. 2004-05). She moved to suppress "any and all evidence seized or obtained as
a result of confidential communications made to her attorney, Dawn Meredith" on the basis that
Meredith had improperly divulged privileged attorney-client communications. The county court-at-law of Caldwell County heard the motion and denied relief. In denying relief, Judge Robison held
that the crime-fraud exception to the attorney-client privilege was implicated. Woody subsequently
pled nolo contendere, reserving her right to appeal the suppression ruling, and was placed on
deferred adjudication probation. This appeal followed.


DISCUSSION

 In her sole issue, Woody argues that the trial court erred in denying her motion to
suppress because Meredith improperly disclosed privileged attorney-client information--namely,
the fact that the letter from Dr. Walters was forged. Woody adds that the crime-fraud exception to
the attorney-client privilege does not apply. See Tex. R. Evid. 503(d)(1).


Standard of review: motion to suppress

 The appropriate standard for reviewing a trial court's ruling on a motion to suppress
is a bifurcated standard of review, giving almost total deference to a trial court's determination of
historical facts and reviewing de novo the court's application of the law. Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). The trial court is the sole judge of the credibility of the witnesses and the weight to be
given their testimony, and it may choose to believe or disbelieve any or all of a witness's testimony. 
Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); Wood v. State, 18 S.W.3d 642, 646
(Tex. Crim. App. 2000). We must sustain the trial court's ruling if it is reasonably supported by the
record and is correct on any theory of law applicable to the case. State v. Gray, 158 S.W.3d 465, 467
(Tex. Crim. App. 2005) (quoting State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000));
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).


Standard of Review: attorney-client privilege


 In Henderson v. State, 962 S.W.2d 544 (Tex. Crim. App. 1997), the Court of
Criminal Appeals noted that at least one federal circuit has held that mixed questions of law and fact,
regarding the applicability of the attorney-client privilege to particular communications must be
reviewed de novo. Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1413 (11th Cir.),
opinion modified on other grounds, 30 F.3d 1347 (1994), cert. denied, 513 U.S. 1110, 115 S. Ct.
900, 130 L. Ed. 2d 784 (1995). It also recognized its own precedent in applying de novo review to
mixed questions of law and fact. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)
(plurality opinion); id. at 139-41 (McCormick, J., concurring); id. at 141-45 (Clinton, J., concurring);
id. at 145-50 (Keller, J., concurring).

 With regard to motions to suppress, however, the appellate court reviews a trial
court's ruling for an abuse of discretion. Villarreal, 935 S.W.2d at 138. The trial judge is the sole
and exclusive trier of facts at a suppression hearing. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). Therefore, an appellate court must defer to a trial court's determination of
historical facts supported by the record, especially when the trial court's fact findings are based on
an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). Accordingly, we will defer to the trial court's determination of historical facts but review de
novo the application of law to those facts.


Attorney-client privilege


 The attorney-client privilege is governed by Texas Rule of Evidence 503, which
provides, in relevant part:


(b) Rules of Privilege.


 (1) General rule of privilege. A client has a privilege to refuse to disclose and
prevent any other person from disclosing confidential communications
made for the purpose of facilitating the rendition of professional legal
services to the client:


 (A) between the client or a representative of the client and the client's
lawyer;


 * * * 


 (2) Special rule of privilege in criminal cases. In criminal cases, a client has
a privilege to prevent the lawyer or lawyer's representative from disclosing
any other fact which came to the knowledge of the lawyer or the lawyer's
representative by reason of the attorney-client relationship.


 * * * 

 

(d) Exceptions. There is no privilege under this rule:

 

 (1) Furtherance of crime or fraud. If the services of the lawyer were sought or
obtained to enable or aid anyone to commit or plan to commit what the
client knew or reasonably should have known to be a crime or fraud; 


 * * *


Tex. R. Evid. 503. 

 The attorney-client privilege protects communication between attorney and client. 
See Huie v. DeShazo, 922 S.W.2d 920, 922 (Tex. 1996) (privilege allows "unrestrained
communication and contact between an attorney and client in all matters in which the attorney's
professional advice or services are sought, without fear that these confidential communications will
be disclosed by the attorney, voluntarily or involuntarily, in any legal proceeding"). For a
communication to be privileged, it must appear that the communication was made by a client seeking
legal advice from a lawyer in her capacity as such and the communication must relate to the purpose
for which the advice is sought; the proof, express or circumstantial, must indicate the client's desire
for confidence and secrecy. Austin v. State, 934 S.W.2d 672, 673 (Tex. Crim. App. 1996); State v.
DeAngelis, 116 S.W.3d 396, 404 (Tex. App.--El Paso 2003, no pet.). A communication is
confidential if not intended to be disclosed to third persons other than those to whom disclosure is
made in furtherance of the rendition of professional legal services to the client. Tex. R. Evid.
503(b)(1).


Whether the attorney-client privilege applies


 Woody argues that information regarding the authenticity of the note was protected
by the attorney-client privilege and that the crime-fraud exception did not permit Meredith to reveal
the forgery to the court. See Henderson, 962 S.W.2d at 556. We conclude that Meredith's
disclosure that the note may have been forged did not implicate the attorney-client privilege. The
privilege is designed for the benefit of the client by guaranteeing to the client the confidentiality
necessary to promote forthright communications between the lawyer and the client. Carmona v.
State, 941 S.W.2d 949, 953 (Tex. Crim. App. 1997). An attorney's testimony does not violate the
privilege when no communications between counsel and a defendant have been revealed. Manning
v. State, 766 S.W.2d 551, 556-58 (Tex. App.--Dallas), opinion adopted, 773 S.W.2d 568, 569 (Tex.
Crim. App. 1989). None were revealed here--Meredith discovered the fact of the forgery from a
third party, not Woody.

 We hold that the attorney-client privilege was not implicated by the information Dr.
Walters provided Meredith. The doctor telephoned Meredith to clear up the error made by his staff
in confirming the note's authenticity. This communication was outside the scope of the professional
relationship between Woody and Meredith. As such, the evidence did not fall within the scope of
the attorney-client privilege.


Applicability of crime-fraud exception


 Alternately, even if the attorney-client privilege had been implicated here, the
information at issue would have fallen within the crime-fraud exception to the privilege. An
exception to the attorney-client privilege applies "[i]f the services of the lawyer were sought or
obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably
should have known to be a crime or fraud." Tex. R. Evid. 503(d)(1); Henderson, 962 S.W.2d at 553
(plain language of the rule indicates that a continuing or future crime is not enough; the attorney's
services must be sought to aid in the commission of the crime). The exception does not apply when
a client is seeking advice relating to crimes or frauds already committed. See Henderson, 962
S.W.2d at 552-53 ("The title of the exception does not say merely 'Crime or Fraud' but says instead
'Furtherance of Crime or Fraud'). Thus, the crime-fraud exception ensures that the attorney-client
privilege serves its intended purposes of enabling clients to obtain legal services based on frank and
open communication while not reducing lawyers to mere conduits for illegal activity. See Huie, 922
S.W.2d at 922.

 The party seeking to take advantage of the crime-fraud exception has the burden of
establishing its applicability. See Henderson, 962 S.W.2d at 553. The proponent must make out a
prima facie case sufficient to satisfy the court that the client was engaged in an ongoing crime or
fraud or was seeking to commit a crime or fraud. Henderson, 962 S.W.2d at 553; Granada Corp.
v. First Court of Appeals, 844 S.W.2d 223, 227 (Tex. 1992). Whether the proponent has established
a prima facie showing is a matter for the court to decide. Henderson, 962 S.W.2d at 553. The prima
facie case requirement is met when the party asserting the exception offers evidence establishing the
elements of fraud and establishing that the fraud was ongoing or about to be committed when the
privileged communication occurred. Cigna Corp. v. Spears, 838 S.W.2d 561 (Tex. App.--San
Antonio 1992, orig. proceeding); Freeman v. Bianchi, 820 S.W.2d 853, 861-62 (Tex.
App.--Houston [1st Dist.] 1991, pet. denied). The prima facie proof must show a violation
sufficiently serious to defeat the privilege. Arkla, Inc. v. Harris, 846 S.W.2d 623, 629-30 (Tex.
App.--Houston [14th Dist.] 1993, orig. proceeding); Freeman v. Bianchi, 820 S.W.2d at 861. A
mere allegation in the pleadings of fraud is insufficient. In re Monsanto, 998 S.W.2d 917, 934 (Tex.
App.--Waco 1999, orig. proceeding). The communication must relate to the crime or fraud. 
Granada Corp., 844 S.W.2d at 227. The documents themselves may be used to determine whether
a prima facie case has been established. Cigna Corp., 838 S.W.2d at 569. The evidence must set
forth sufficient proof to support a finding if evidence to the contrary is disregarded. Freeman, 820
S.W.2d at 862.

 Meredith testified on behalf of the State that Woody provided her with a forged note
stating that Woody was not present at the February 11, 2002 hearing because she was being treated
by Dr. Walters on that date. Judge Robison had invited such an explanation as a basis for
withdrawing or delaying issuance of a warrant for Woody. Meredith believed the note was forged
and believed Woody had used her services in furtherance of a crime or fraud. Meredith attached a
cover letter to the note and an x-ray she initially believed had been sent by Dr. Walters. She asked
Judge Robison to withdraw the warrant he had issued in connection with Woody's failure to appear. 
Meredith forwarded these documents to Comal County for delivery to Judge Robison. When Dr.
Walters subsequently notified Meredith of the forgery, she contacted the court in an effort to
intercept the documents, prevent the perpetration of the fraud, and stop the court from withdrawing
the warrant. Woody presented no evidence to discredit Meredith's testimony.

 The State met its burden by presenting evidence that Woody attempted to use
Meredith's services to perpetrate a fraud on the district court in order to avoid the consequences of
failing to appear at the scheduled hearing. We are not persuaded by Woody's contention that the
crime was complete at the time she forged the note and was, therefore, a past crime. An ongoing
crime combines aspects of past and future activity. When Woody transmitted the forged note to
Meredith, she intended that Meredith use the document in her representation of Woody. Woody
relied upon Meredith to deliver the note, thereby using the attorney-client relationship to further her
crime. The fraud continued pending the trial court's decision regarding the withdrawal of the
warrant. The trial court properly ruled that the crime-fraud exception to the attorney-client privilege
was implicated.

CONCLUSION

 Having overruled Woody's sole issue, we affirm the order deferring adjudication. 



 

 Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: October 6, 2005

Do Not Publish

1. The record does not include a transcript of the February 11 hearing. We have gleaned the
facts from Meredith's testimony at the suppression hearing.
2. Meredith testified that she did not recall where or from whom the letter was faxed; court
employees who later handled the letter also testified that they did not know the origin of the letter
other than that it purported to be written by Dr. Walters and faxed by Meredith.
3. At the suppression hearing, Meredith testified that any time she is "asked to do something
that involves the Court" involving an excuse for a client, she first verifies its accuracy.
4. It appears that the x-ray was faxed at the same time as the note from Dr. Walters's office.
5. It is unclear how Dr. Walters discovered that Meredith had inquired regarding the note's
authenticity prior to his phone call.