# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00069-CR

**Natalie Jean Woody, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY
### NO. 31210, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Natalie Jean Woody appeals the trial court's order deferring adjudication after her motion to suppress based on an alleged infringement of her attorney-client privilege was denied. We will affirm the order.

## BACKGROUND

On February 11, 2002, Woody was scheduled to appear in court for a hearing on burglary charges. *See* Tex. Pen. Code Ann. § 30.02 (West 2003). Woody failed to appear, but Dawn Meredith, the attorney of record, apparently notified the court that Woody's failure to appear may have been due to medical reasons.[1] The court informed Meredith that it would delay issuing a

---

[1] The record does not include a transcript of the February 11 hearing. We have gleaned the facts from Meredith's testimony at the suppression hearing.

warrant for a few days to give Meredith the opportunity to obtain a letter from Woody's doctor verifying that explanation for Woody's absence. The record suggests that the warrant may have subsequently issued.

Approximately two weeks later, a note written on the letterhead of Robert M. Walters, M.D., was faxed to Meredith.[2] The note stated that Woody had been treated by Dr. Walters at Austin's Seton Medical Center on February 11. To verify the note's authenticity, Meredith called Dr. Walters's office; an employee verified that the note was authentic.[3] Meredith then made a series of phone calls to locate the trial court judge, the Honorable Jack Robison, whose district includes not only Caldwell County, but also Comal and Hays counties. She located Judge Robison in Comal County and faxed the note, along with a cover letter and an x-ray, to a court employee for delivery to the judge.[4] In her cover letter, Meredith requested that the trial court withdraw the warrant issued for Woody's failure to appear at the February 11 hearing.

Approximately thirty minutes later, Dr. Walters called Meredith and informed her that he did not write the note.[5] Meredith immediately called the court employee to whom she had faxed the documents in an attempt to intercept or retract them. The employee advised her that he had

---

[2] Meredith testified that she did not recall where or from whom the letter was faxed; court employees who later handled the letter also testified that they did not know the origin of the letter other than that it purported to be written by Dr. Walters and faxed by Meredith.

[3] At the suppression hearing, Meredith testified that any time she is "asked to do something that involves the Court" involving an excuse for a client, she first verifies its accuracy.

[4] It appears that the x-ray was faxed at the same time as the note from Dr. Walters's office.

[5] It is unclear how Dr. Walters discovered that Meredith had inquired regarding the note's authenticity prior to his phone call.

already given the documents to Judge Robison. Meredith then informed the court employee that she believed the note purporting to be from Dr. Walters may have been a forgery.

Subsequently, Woody was charged by information for the offense of forgery. *See id*. § 32.21 (West Supp. 2004-05). She moved to suppress "any and all evidence seized or obtained as a result of confidential communications made to her attorney, Dawn Meredith" on the basis that Meredith had improperly divulged privileged attorney-client communications. The county court-at-law of Caldwell County heard the motion and denied relief. In denying relief, Judge Robison held that the crime-fraud exception to the attorney-client privilege was implicated. Woody subsequently pled *nolo contendere*, reserving her right to appeal the suppression ruling, and was placed on deferred adjudication probation. This appeal followed.

## DISCUSSION

In her sole issue, Woody argues that the trial court erred in denying her motion to suppress because Meredith improperly disclosed privileged attorney-client information—namely, the fact that the letter from Dr. Walters was forged. Woody adds that the crime-fraud exception to the attorney-client privilege does not apply. *See* Tex. R. Evid. 503(d)(1).

**Standard of review: motion to suppress**

The appropriate standard for reviewing a trial court's ruling on a motion to suppress is a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing *de novo* the court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial court is the sole judge of the credibility of the witnesses and the weight to be

given their testimony, and it may choose to believe or disbelieve any or all of a witness's testimony. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Wood v. State*, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000). We must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Gray*, 158 S.W.3d 465, 467 (Tex. Crim. App. 2005) (quoting *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

**Standard of Review: attorney-client privilege**

In *Henderson v. State*, 962 S.W.2d 544 (Tex. Crim. App. 1997), the Court of Criminal Appeals noted that at least one federal circuit has held that mixed questions of law and fact, regarding the applicability of the attorney-client privilege to particular communications must be reviewed *de novo*. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1413 (11th Cir.), *opinion modified on other grounds*, 30 F.3d 1347 (1994), *cert. denied*, 513 U.S. 1110, 115 S. Ct. 900, 130 L. Ed. 2d 784 (1995). It also recognized its own precedent in applying *de novo* review to mixed questions of law and fact. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (plurality opinion); *id*. at 139-41 (McCormick, J., concurring); *id.* at 141-45 (Clinton, J., concurring); *id*. at 145-50 (Keller, J., concurring).

With regard to motions to suppress, however, the appellate court reviews a trial court's ruling for an abuse of discretion. *Villarreal*, 935 S.W.2d at 138. The trial judge is the sole and exclusive trier of facts at a suppression hearing. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Therefore, an appellate court must defer to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on

4

an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Accordingly, we will defer to the trial court's determination of historical facts but review *de novo* the application of law to those facts.

**Attorney-client privilege**

The attorney-client privilege is governed by Texas Rule of Evidence 503, which provides, in relevant part:

> (b) Rules of Privilege.
>
> (1) General rule of privilege. A client has a privilege to refuse to disclose and prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (A) between the client or a representative of the client and the client's lawyer;
>
> * * *
>
> (2) Special rule of privilege in criminal cases. In criminal cases, a client has a privilege to prevent the lawyer or lawyer's representative from disclosing any other fact which came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship.
>
> * * *
>
> (d) Exceptions. There is no privilege under this rule:
>
> (1) *Furtherance of crime or fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud;
>
> * * *

Tex. R. Evid. 503.

The attorney-client privilege protects communication between attorney and client. *See Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex. 1996) (privilege allows "unrestrained communication and contact between an attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential communications will be disclosed by the attorney, voluntarily or involuntarily, in any legal proceeding"). For a communication to be privileged, it must appear that the communication was made by a client seeking legal advice from a lawyer in her capacity as such and the communication must relate to the purpose for which the advice is sought; the proof, express or circumstantial, must indicate the client's desire for confidence and secrecy. *Austin v. State*, 934 S.W.2d 672, 673 (Tex. Crim. App. 1996); *State v. DeAngelis*, 116 S.W.3d 396, 404 (Tex. App.—El Paso 2003, no pet.). A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client. Tex. R. Evid. 503(b)(1).

**Whether the attorney-client privilege applies**

Woody argues that information regarding the authenticity of the note was protected by the attorney-client privilege and that the crime-fraud exception did not permit Meredith to reveal the forgery to the court. *See Henderson*, 962 S.W.2d at 556. We conclude that Meredith's disclosure that the note may have been forged did not implicate the attorney-client privilege. The privilege is designed for the benefit of the client by guaranteeing to the client the confidentiality necessary to promote forthright communications between the lawyer and the client. *Carmona v. State*, 941 S.W.2d 949, 953 (Tex. Crim. App. 1997). An attorney's testimony does not violate the

6

privilege when no communications between counsel and a defendant have been revealed. *Manning v. State*, 766 S.W.2d 551, 556-58 (Tex. App.—Dallas), *opinion adopted*, 773 S.W.2d 568, 569 (Tex. Crim. App. 1989). None were revealed here—Meredith discovered the fact of the forgery from a third party, not Woody.

We hold that the attorney-client privilege was not implicated by the information Dr. Walters provided Meredith. The doctor telephoned Meredith to clear up the error made by his staff in confirming the note's authenticity. This communication was outside the scope of the professional relationship between Woody and Meredith. As such, the evidence did not fall within the scope of the attorney-client privilege.

**Applicability of crime-fraud exception**

Alternately, even if the attorney-client privilege had been implicated here, the information at issue would have fallen within the crime-fraud exception to the privilege. An exception to the attorney-client privilege applies "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." Tex. R. Evid. 503(d)(1); *Henderson*, 962 S.W.2d at 553 (plain language of the rule indicates that a continuing or future crime is not enough; the attorney's services must be sought to aid in the commission of the crime). The exception does not apply when a client is seeking advice relating to crimes or frauds already committed. *See Henderson*, 962 S.W.2d at 552-53 ("The title of the exception does not say merely 'Crime or Fraud' but says instead 'Furtherance of Crime or Fraud'). Thus, the crime-fraud exception ensures that the attorney-client privilege serves its intended purposes of enabling clients to obtain legal services based on frank and

open communication while not reducing lawyers to mere conduits for illegal activity. *See Huie*, 922 S.W.2d at 922.

The party seeking to take advantage of the crime-fraud exception has the burden of establishing its applicability. *See Henderson*, 962 S.W.2d at 553. The proponent must make out a *prima facie* case sufficient to satisfy the court that the client was engaged in an ongoing crime or fraud or was seeking to commit a crime or fraud. *Henderson*, 962 S.W.2d at 553; *Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223, 227 (Tex. 1992). Whether the proponent has established a *prima facie* showing is a matter for the court to decide. *Henderson*, 962 S.W.2d at 553. The *prima facie* case requirement is met when the party asserting the exception offers evidence establishing the elements of fraud and establishing that the fraud was ongoing or about to be committed when the privileged communication occurred. *Cigna Corp. v. Spears*, 838 S.W.2d 561 (Tex. App.—San Antonio 1992, orig. proceeding); *Freeman v. Bianchi*, 820 S.W.2d 853, 861-62 (Tex. App.—Houston [1st Dist.] 1991, pet. denied). The *prima facie* proof must show a violation sufficiently serious to defeat the privilege. *Arkla, Inc. v. Harris*, 846 S.W.2d 623, 629-30 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding); *Freeman v. Bianchi*, 820 S.W.2d at 861. A mere allegation in the pleadings of fraud is insufficient. *In re Monsanto*, 998 S.W.2d 917, 934 (Tex. App.—Waco 1999, orig. proceeding). The communication must relate to the crime or fraud. *Granada Corp.*, 844 S.W.2d at 227. The documents themselves may be used to determine whether a *prima facie* case has been established. *Cigna Corp.*, 838 S.W.2d at 569. The evidence must set forth sufficient proof to support a finding if evidence to the contrary is disregarded. *Freeman*, 820 S.W.2d at 862.

Meredith testified on behalf of the State that Woody provided her with a forged note stating that Woody was not present at the February 11, 2002 hearing because she was being treated by Dr. Walters on that date. Judge Robison had invited such an explanation as a basis for withdrawing or delaying issuance of a warrant for Woody. Meredith believed the note was forged and believed Woody had used her services in furtherance of a crime or fraud. Meredith attached a cover letter to the note and an x-ray she initially believed had been sent by Dr. Walters. She asked Judge Robison to withdraw the warrant he had issued in connection with Woody's failure to appear. Meredith forwarded these documents to Comal County for delivery to Judge Robison. When Dr. Walters subsequently notified Meredith of the forgery, she contacted the court in an effort to intercept the documents, prevent the perpetration of the fraud, and stop the court from withdrawing the warrant. Woody presented no evidence to discredit Meredith's testimony.

The State met its burden by presenting evidence that Woody attempted to use Meredith's services to perpetrate a fraud on the district court in order to avoid the consequences of failing to appear at the scheduled hearing. We are not persuaded by Woody's contention that the crime was complete at the time she forged the note and was, therefore, a past crime. An ongoing crime combines aspects of past and future activity. When Woody transmitted the forged note to Meredith, she intended that Meredith use the document in her representation of Woody. Woody relied upon Meredith to deliver the note, thereby using the attorney-client relationship to further her crime. The fraud continued pending the trial court's decision regarding the withdrawal of the warrant. The trial court properly ruled that the crime-fraud exception to the attorney-client privilege was implicated.

9

## CONCLUSION

Having overruled Woody's sole issue, we affirm the order deferring adjudication.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   October 6, 2005

Do Not Publish